CC-1999-37                                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Mildred Álvarez Elvira<br>    Recurrida<br><br>            v.<br><br>Miguel Arias Ferrer<br>    Peticionario | Certiorari<br><br>2002 TSPR 31<br><br>156 DPR ____ |

Número del Caso: CC-2001-310


Fecha: 18/marzo/2002


Tribunal de Circuito de Apelaciones:
                              Circuito Regional VII


Juez Ponente:
                              Hon. Zaida Hernández Torres


Abogados de la Parte Peticionaria:
                              Lcdo. Edgardo M. Pérez Viera
                              Lcda. Jeanette Ortiz Montalvo


Abogada de la Parte Recurida:
                              Lcda. Margarita Carrillo Iturrino


Materia: Alimentos




        Este documento constituye un documento oficial del Tribunal Supremo que está
        sujeto a los cambios y correcciones del proceso de compilación y publicación
        oficial de las decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Mildred Álvarez Elvira

     Recurrida

       v.                                   CC-2001-310

Miguel Arias Ferrer

     Peticionario


**Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO**


**San Juan, Puerto Rico a 18 de marzo de 2002.**


**I**

     **Tras aproximadamente un año de matrimonio y haber procreado un hijo, el 22 de diciembre de 1987, el Sr. Miguel Arias Ferrer (en adelante "el peticionario"), y la Sra. Mildred Álvarez Elvira (en adelante "la recurrida"), se divorciaron en el condado de Dade en el estado de la Florida. En el procedimiento de divorcio el tribunal otorgó a la recurrida la custodia del menor e impuso al peticionario la obligación de pagar una pensión de trescientos dólares ($300) a favor del niño si éste permanecía residiendo en el condado de Dade, o doscientos dólares ($200) en la eventualidad de que se mudara del referido condado.**

En el año 1988 la recurrida se mudó a Puerto Rico junto a su hijo, por lo que el peticionario comenzó a pagar la cantidad de doscientos dólares ($200), por concepto de pensión alimentaria.

Así las cosas, el 4 de agosto de 1995 la recurrida presentó ante el Tribunal de Primera Instancia (TPI), una petición a los fines de que se aumentara la pensión fijada a favor del menor por el tribunal del condado de Dade en Florida. Conforme al procedimiento administrativo expedito en casos en que se solicita la revisión de una pensión alimentaria, el 31 de agosto de 1995, la Secretaría del TPI expidió una notificación a ser entregada al peticionario junto a la petición de la recurrida, la cual nunca fue diligenciada. En las fechas de 15 de noviembre de 1995, 12 de diciembre de 1995 y 18 de marzo de 1996, se expidieron nuevamente sendas notificaciones. Ninguna de ellas fue diligenciada en la persona del peticionario.[1]

Por quinta ocasión, el 21 de mayo de 1996, se expidió una nueva notificación. El 31 de mayo de 1996, ésta fue diligenciada personalmente al peticionario en Miami, Florida, por conducto del Sr. Pedro L. Figueroa, quien se desempeña como *Certified Process Server* para el abogado Stephen R. Panunzio.

Luego de haberse señalado y celebrado una vista ante la Examinadora de Pensiones Alimentarias (en adelante "la Examinadora"), ésta presentó un informe al respecto ante el TPI.[2] El 14 de octubre de 1996, y acogiendo la recomendación de la Examinadora, el tribunal emitió una sentencia imponiendo al peticionario la obligación de satisfacer la cantidad de mil dólares ($1,000) mensuales por concepto de pensión alimentaria a favor de su hijo. La notificación al peticionario de dicha sentencia le fue erróneamente remitida a la abogada de la recurrida, razón por la cual el primero nunca fue notificado del dictamen del TPI.

Mediante escrito de 9 de marzo de 2000, es decir, transcurridos más de tres años a partir del dictamen del TPI, la recurrida compareció ante el TPI alegando que el recurrido adeudaba la cantidad de cuarenta y dos mil cuatrocientos dólares ($42,400), por concepto de pensiones alimentarias. Además, adujo que no había logrado localizar al peticionario, quien residía en Miami, Florida, y que actualmente se encontraba de vacaciones en Puerto Rico. Asimismo, indicó que el peticionario se alojaba en el Hotel El Conquistador en Fajardo y que éste abandonaría la Isla el 13 de marzo de 2000.

Tras evaluar el escrito de la recurrida y sin la presencia del peticionario, el 9 de marzo de 2000, el TPI emitió una orden de arresto y encarcelación, en la que encontró al peticionario incurso en desacato por no cumplir las órdenes del tribunal.

El 10 de marzo de 2000, la recurrida compareció nuevamente mediante escrito ante el TPI, a los fines de solicitar, *inter alia*, que se impidiera la salida del peticionario del

---

[1] Sin embargo, debemos indicar que la notificación emitida el 12 de diciembre de 1995 fue remitida vía correo certificado con acuse de recibo a la dirección del promovido en Florida, siendo ésta recibida por Eugenia Sánchez, actual suegra del peticionario.

[2] La vista fue celebrada el 12 de junio de 1996, y el informe de la Examinadora fue suscrito el 22 de agosto de 1996.

país y que se revisara y aumentara la pensión a favor de su hijo. Ese día, el peticionario fue arrestado en el Hotel El Conquistador y fue encarcelado en la Cárcel Regional de Bayamón.

Así, el 13 de marzo de 2000 la Sra. Juanita Arias, esposa del peticionario, presentó una petición de hábeas corpus. Alegó que el peticionario fue arrestado y encarcelado ilegalmente, ya que éste no tuvo la oportunidad de rebatir el alegado incumplimiento con la obligación alimentaria, violándose así su debido proceso de ley.

Luego de su estancia en una celda durante todo un fin de semana, el lunes 13 de marzo de 2000, el peticionario fue llevado ante el TPI para la celebración de una vista. A través de su representación legal, el peticionario indicó desconocer que se hubiese aumentado la pensión alimentaria a favor de su hijo, ya que la sentencia mediante la cual se decretó dicho aumento nunca le fue notificada. El TPI no acogió los planteamientos del peticionario y entendió que éste debía la cantidad reclamada por la recurrida, la cual fue computada a base del aumento decretado en 1996.

El TPI expresó que el único ánimo del tribunal era que se pagara la alegada deuda. Ante los intentos de la representación legal del peticionario para exponer los fundamentos bajo los cuales se cuestionaba el aumento de la pensión alimentaria, el TPI indicó lo siguiente:

> Mire, el ánimo del Tribunal es pagar la deuda. Ese es el único ánimo del Tribunal. Que se pague una deuda que se debe desde el 1995. Y la excusa que usted me da, compañero, con todo el respeto que usted se merece, si él fue citado para la Vista de Fijación . . . de Revisión de Pensión Alimentaria, él debió de haber hecho las gestiones de [sic.] ver qué pasa [sic.] con esa vista que yo [sic.] no fui [sic.].[3]

Tras la insistencia de la representación legal del peticionario por traer ante la atención del tribunal que la sentencia no le fue notificada, el TPI indicó: "Cantidad razonable para este Tribunal, mire, menos de $30,000.00 no es excarcelado."[4]

Luego de un receso señalando la vista para un turno posterior y tras haberse reunido las partes, éstas estipularon en corte abierta, inter alia, el pago de la cantidad alegadamente debida y las relaciones paterno filiales. Respecto al pago de la pensión, acordaron que el peticionario pagaría ese mismo día la cantidad de $30,000, y que para satisfacer los $16,000 restantes pagaría $5,000 en los meses de junio y diciembre, respectivamente, y de abril a septiembre abonaría $1,000 mensuales.

Así también, el TPI refirió el caso a la Oficina de Trabajo Social para que realizara un estudio sobre las relaciones paterno filiales y una evaluación sicológica al menor. A los fines de discutir el informe a ser preparado por la Oficina de Trabajo Social, el TPI señaló una vista para el 7 de agosto de 2000. Además, señaló una vista a ser celebrada ante la Examinadora a los efectos de revisar la pensión concernida. Luego de pagar la cantidad de $30,000, el peticionario fue excarcelado.

---

[3] Transcripción de la vista celebrada el 13 de marzo de 2000, Apéndice de la Petición de Certiorari, pág. 76.

[4] Íd., pág. 91.

El 12 de abril de 2000, el peticionario presentó ante el Tribunal de Circuito de Apelaciones (TCA), un *Escrito de Apelación*, el cual fue acogido como un recurso de *certiorari* el 29 de septiembre de 2000. En síntesis, el peticionario alegó que el TPI carecía de jurisdicción al celebrar la vista del 13 de marzo de 2000. A su entender, el TPI no adquirió jurisdicción sobre su persona, dado que la pensión fue aumentada en 1996 sin éste haber sido previamente emplazado conforme a derecho. Además, la sentencia a esos efectos tampoco le fue notificada. Respecto a la orden de arresto y eventual encarcelación, adujo que el TPI incidió al decretar la misma ya que ésta fue emitida sin la celebración de una vista y sin que previamente la recurrida hubiese solicitado la intervención del tribunal por el alegado incumplimiento con la pensión alimentaria. Conforme a ello, el peticionario alegó que el TPI carecía de autoridad para celebrar una vista con el fin de cobrar una deuda producto de una sentencia inválida.

El 7 de agosto de 2000, antes de que el TCA entendiera en los méritos del recurso pendiente ante sí, se celebró ante el TPI la vista señalada respecto al informe social sobre la situación familiar en aquella época. De la minuta de la vista surge que mediante conversación telefónica entre el tribunal y la representación legal del peticionario, se indicó a este último que el escrito presentado ante el TCA no tenía el efecto de paralizar la vista. Ni el peticionario ni su representación legal comparecieron a la misma. Además, surge que el peticionario no había satisfecho la cantidad de $16,000 que alegadamente adeudaba. Así, el TPI transfirió la referida vista para el 4 de octubre de 2000 y ordenó al peticionario que para dicha fecha estuviera al día en el pago de la pensión alegadamente adeudada.

Para la misma fecha, 7 de agosto de 2000, se celebró una vista ante la Examinadora a los fines de revisar la pensión a favor del menor. Debido a que el peticionario y su representación legal se ausentaron a la misma, ésta fue reseñalada para el 14 de noviembre de 2000. Además, la Examinadora recomendó que se fijara una pensión provisional de $2,319.62 mensuales, a consignarse en la Administración para el Sustento de Menores (ASUME), lo cual fue adoptado por el TPI mediante Resolución a esos efectos.[5]

---

[5] Surge de los autos que, el 23 de marzo de 2001 el peticionario consignó en la Secretaría del TPI, bajo protesta, la cantidad de treinta y seis mil setecientos

continúa...

...5 continuación

cincuenta y cuatro dólares con cuarenta y cuatro centavos ($36,754.44), por concepto de pensión alimentaria atrasada, solicitando que este dinero no fuera entregado a la parte recurrida hasta tanto se resolviera de forma definitiva las cuestiones de jurisdicción sobre su persona y la revisión de pensión. También surge del expediente que el 1 de junio de 2001, el peticionario consignó en la Secretaría del tribunal la cantidad de seis mil novecientos cincuenta y ocho dólares con ochenta y seis centavos ($6,958.86), y que continuó consignando la pensión provisional de dos mil trescientos diecinueve dólares con sesenta y dos centavos ($2,319.62) por lo menos hasta el mes de diciembre de 2001.

Ese mismo día, el peticionario solicitó al TPI que paralizara los procedimientos. Entre otras cosas, alegó que el TPI nunca había adquirido jurisdicción sobre su persona por las mismas razones expresadas en el recurso presentado ante el TCA.

Finalmente, el 3 de octubre de 2000, el TCA denegó el recurso presentado por el peticionario.[6] Ello, por entender que dado la etapa en que se encontraba la reclamación ante el TPI no era propicia su intervención, y que la expedición del mismo provocaría mayor dilación en la adjudicación de la controversia ante el foro de instancia. Devolvió el caso al TPI y expresó que nada impedía que las partes presentaran ante dicho foro sus defensas, inclusive, la de falta de jurisdicción y lo referente a la pensión estipulada.

Luego de varios incidentes procesales, el 1 de noviembre de 2000 el TPI emitió una Resolución y Orden. Determinó que el tribunal había adquirido jurisdicción sobre el peticionario previo a la vista celebrada en 1996, en la cual se aumentó la pensión alimentaria a favor de su hijo. Respecto a la vista celebrada el 13 de marzo de 2000, concluyó que aunque el peticionario alegó que no fue notificado de la sentencia decretando el aumentó de pensión, "[éste] se sometió tácitamente a su jurisdicción al no levantar oportunamente la defensa de falta de jurisdicción y estipular la deuda reclamada."[7] De esta manera, declaró no ha lugar a la moción sobre la paralización de los procedimientos presentada por el peticionario el 7 de agosto de 2000. Además, determinó que el peticionario adeudaba la cantidad de $31,158.00 más intereses por mora a razón del 10.5%, y le ordenó que continuara pagando la pensión provisional anteriormente impuesta.

Insatisfecho, el 13 de diciembre de 2000, el peticionario presentó un recurso de *certiorari* ante el TCA, el cual fue acogido como una apelación mediante Resolución de 8 de febrero de 2001.[8] En resumen, alegó que el TPI actuó sin jurisdicción al aumentar la pensión

---

[6] Mediante la misma Resolución, el TCA declaró no ha lugar una moción en auxilio de jurisdicción presentada por el peticionario el 29 de septiembre de 2000. En dicha moción el peticionario solicitó la paralización de los procedimientos señalados por el TPI para el 4 de octubre de 2000.

[7] Resolución y Orden de 1 de noviembre de 2000 emitida por el TPI, Apéndice de la Petición de *Certiorari*, pág. 38.

[8] El TCA erró al acoger el recurso presentado como un escrito de apelación. Nótese que el recurso de apelación es aquel mediante el cual se solicita la revisión de una **sentencia** emitida por un tribunal de primera instancia. Es decir, la apelación es el recurso indicado para revisar un dictamen mediante el cual el tribunal de primera instancia

continúa...

... [8] continuación

dispuso del pleito **en su totalidad.** En el caso de autos, el peticionario recurrió de una determinación interlocutoria mediante la cual sólo se resolvieron planteamientos jurisdiccionales, mas no adjudicó la reclamación sobre pensión alimentaria, quedando en el tintero la fijación final de la pensión concernida. Véase, Ley Núm. 1 de 28 de julio 1994 según enmendada, conocida como la Ley de la Judicatura de Puerto Rico de 1994, art. 4.002, 4 L.P.R.A. sec. 22k; R.TCA 13(A) y 32(D), 4 L.P.R.A. ap. XXII-A; *Figueroa v. Del Rosario*, res. el 23 de noviembre de 1998, 147 D.P.R. ___, 98 TSPR 158, 98 JTS 151.

alimentaria a favor de su hijo mediante sentencia de 14 de octubre de 1996 y al poner en vigor dicho decreto. Adujo que el TPI erró, además, al emitir la orden de arresto por desacato sin antes celebrar una vista para determinar causa y al concluir que el peticionario se sometió voluntariamente a su jurisdicción y que nunca cuestionó la misma. En cuanto a la estipulación en corte abierta, alegó que el TPI incidió al concluir que la misma fue válida, aun cuando ésta nunca se suscribió, ni se juramentó, ni fue presentada ante el tribunal dentro del término ordenado.

Mediante sentencia de 27 de febrero de 2001, el TCA confirmó la Resolución del tribunal de instancia. Aun cuando el foro intermedio se expresó respecto a la normativa sobre notificación, no determinó de forma alguna si el TPI había adquirido jurisdicción sobre el peticionario al emitir la sentencia decretando el aumento de la pensión alimentaria. El TCA confirmó el dictamen recurrido bajo el fundamento de una sumisión voluntaria del peticionario. Al respecto, el TCA expresó: "si hubo algún error en la forma de notificación de la celebración de la vista, lo que de ordinario invalidaría la sentencia emitida, quedó subsanado con la sumisión voluntaria del peticionario a la jurisdicción del tribunal de instancia . . . ."[9] Con relación a los señalamientos sobre la encarcelación del peticionario, el TCA indicó que en esos momentos no estaba en posición de ofrecerle un remedio y que éste pudo haber presentado un hábeas corpus cuestionando la legalidad de su arresto.

Aún inconforme, el 17 de abril de 2001, el peticionario presentó un recurso de *certiorari* ante nos alegando la comisión de los siguientes errores:

Erró el Honorable Tribunal de Circuito de Apelaciones al:

1. resolver que para adquirir jurisdicción sobre la persona del peticionario residente fuera de Puerto Rico en un caso de revisión de pensión alimenticia, basta con emitir y notificar una citación conforme a lo dispuesto en el artículo 15 de la Ley de Sustento de Menores y no un diligenciamiento conforme a las Reglas de Procedimiento Civil.

2. resolver que las Reglas de Procedimiento Civil relacionadas con el emplazamiento de residentes fuera de Puerto Rico deben ser interpretadas liberalmente en los casos de pensiones alimentarias de menores.

3. resolver que el peticionario tenía disponible el recurso de habeas corpus para cuestionar la legalidad de su arresto y encarcelamiento sumario sin vista previa.

4. resolver que el Tribunal de Primera Instancia tenía jurisdicción sobre el peticionario aún [*sic*] cuando no se le había diligenciado, conforme a lo establecido en las Reglas de Procedimiento Civil, la petición de revisión de pensión alimenticia y la citación a la vista de revisión correspondiente, ni se le había notificado la sentencia dictada en el caso de autos.

5. resolver que el peticionario no cuestionó la falta de jurisdicción del tribunal de instancia.

6. resolver que el peticionario se sometió voluntariamente a la jurisdicción del Tribunal de Primera Instancia.

7. resolver que el peticionario, libre y voluntariamente, sin mediar intimidación y/o amenaza consintió a llegar a una estipulación sobre la deuda de alimentos.

---

[9] Sentencia de 27 de febrero de 2001 emitida por el TCA, Apéndice de la Petición de *Certiorari*, pág. 17.

Mediante Resolución de 17 de mayo de 2001, expedimos el auto de *certiorari.*  Contando con la comparecencia de las partes, resolvemos.

                                    II

Antes de atender las controversias ante nos, resulta necesario que expongamos sucintamente algunos preceptos constitucionales referentes a la cláusula del debido proceso de ley.

La sección 7 del Artículo II de la Constitución de Puerto Rico, al igual que las enmiendas V y XIV de la Constitución de los Estados Unidos, garantizan que ninguna persona sea privada de su libertad o propiedad sin el debido proceso de ley.  Const. E.L.A. art. II, sec. 7, 1 L.P.R.A.  El debido proceso de ley se manifiesta en dos vertientes distintas: sustantiva y procesal.  Conforme al debido proceso de ley sustantivo se examina la validez de una ley o reglamento, con el propósito de proteger los derechos fundamentales de los individuos.  "Por otro lado, en el debido proceso de ley *procesal* se le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo."  (Bastardillas en el texto original.) *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 D.P.R. 881, 887 (1993); *López Vives v. Policía de P.R.*, 118 D.P.R. 219 (1987).

En diversas ocasiones, hemos expresado que el debido proceso de ley exige que en todo procedimiento adversativo se cumplan ciertos requisitos, a saber: (1) notificación adecuada de la reclamación presentada; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (5) tener asistencia de abogado; y (6) que la decisión se base en el récord. *Véase*, *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, *supra*.  Es precisamente a través del emplazamiento que se cumple con el requisito de la adecuada notificación. *Véase*, *León v. Rest. El Tropical*, res. el 7 de junio de 2001, 154 D.P.R. ___, 2001 TSPR 81, 2001 JTS 84; *Rodríguez v. Nasrallah*, 118 D.P.R. 93 (1986).

La adecuada notificación constituye un requisito fundamental del debido proceso de ley, el cual es requerido a lo largo de todo el proceso judicial. Por ello, la garantía constitucional requiere que el tribunal notifique toda orden, resolución o sentencia que emita. *Medio Mundo, Inc. v. Rivera*, res. el 8 de junio de 2001, 154 D.P.R. ___, 2001 TSPR 85, 2001 JTS 88; *Martínez, Inc. v. Abijoe Realty Corp.*, res. el 12 de mayo de 2000, 151 D.P.R. ___, 2000 TSPR 73, 2000 JTS 85; *Rodríguez Mora v. García Lloréns*, res. el 17 de diciembre de 1998, 147 D.P.R. ___, 98 TSPR 169, 98 JTS 152; *Falcón Padilla v. Maldonado Quirós*, 138 D.P.R. 983 (1995).

                                   III

Para disponer del recurso ante nos, en primer lugar, corresponde que discutamos si el peticionario fue notificado o emplazado conforme a derecho en el procedimiento iniciado en 1995, y si por consiguiente el TPI asumió jurisdicción sobre su persona.  Además, como

consecuencia de ello, debemos determinar la validez de la sentencia emitida en 1996, mediante la cual se aumentó la pensión alimentaria a ser satisfecha por el peticionario.

A.

Para que los tribunales puedan actuar sobre la persona de un demandado, precisa que dicho foro tenga la autoridad para así hacerlo, es decir, que adquiera jurisdicción sobre su persona. Es el emplazamiento o una notificación el mecanismo procesal mediante el cual el tribunal hace efectiva su jurisdicción y le informa al demandado que existe una reclamación en su contra. *First Bank of P.R. v. Inmob. Nac., Inc.*, 144 D.P.R. 901, 913 (1998). "[El] emplazamiento [o la notificación correspondiente,] representa el paso inaugural del debido proceso de ley que viabiliza el ejercicio de la jurisdicción judicial." *Acosta v. ABC, Inc.*, 142 D.P.R. 927, 931 (1997); *además*, *Reyes Reyes v. Oriental Fed. Savs. Bank*, 133 D.P.R. 15 (1993); *Pagán v. Rivera Burgos*, 133 D.P.R. 750, 754 (1983).

Corresponde al demandante realizar a través de los medios provistos por ley, "todos los actos necesarios para conferir al tribunal completa jurisdicción sobre la persona del demandado sin que a ello venga en forma alguna el demandado obligado a cooperar." *A.F.F. v. Tribunal Superior*, 99 D.P.R. 310, 316 (1970); *además*, *Quiñones Román v. Cía. ABC*, res. el 31 de octubre de 2000, 152 D.P.R. __, 2000 TSPR 160, 2OOO JTS 172; *First Bank of P.R. v. Inmob. Nac., Inc.*, *supra*; *Rivera v. Corte*, 68 D.P.R. 673 (1946). Reiteradamente hemos expresado que, de no cumplirse estrictamente con los requisitos para emplazar conforme a la ley o regla correspondiente, el tribunal estaría impedido de actuar sobre la persona del legitimado pasivo, es decir, que carecería de jurisdicción sobre su persona. *First Bank of P.R. v. Inmob. Nac., Inc.*, *supra*; *Acosta v. ABC, Inc.*, *supra*; *Peguero y otros v. Hernández Pellot*, 139 D.P.R. 487, 494 (1995); *Rodríguez v. Nasrallah*, *supra*, a la pág. 99.

Consistentemente hemos señalado que, toda sentencia o dictamen de un tribunal en contra de un demandado que no ha sido emplazado o notificado conforme a derecho es inválida(o) y no puede ser ejecutada(o). *Acosta v. ABC, Inc.*, *supra*; *Calderón Molina v. Federal Land Bank*, 89 D.P.R. 704, 709 (1963). Así, en la década de 1960 resolvimos que una sentencia dictada sin que se haya adquirido jurisdicción sobre el demandado es nula de nulidad radical, y por consiguiente, inexistente en derecho. *Calderón Molina v. Federal Land Bank*, *supra*; *véase además, Montañez v. Policia de P.R.* res. el 3 de mayo de 2000, 150 D.P.R. __, 2000 TSPR 68, 2000 JTS 81. "Una sentencia dictada sin tal notificación y oportunidad carece de todos los atributos de una determinación judicial; es una usurpación y opresión judicial y nunca puede ser sostenida donde la justicia se administra justicieramente." J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* San Juan, Publicaciones JTS, 2000, t. I, pág. 138.

B.

Mediante la Ley Núm. 5 de 30 de diciembre de 1986, 8 L.P.R.A. sec. 501 *et seq.*, según enmendada, conocida como la Ley Orgánica de la Administración para el Sustento de Menores (en

adelante Ley de ASUME), se creó un procedimiento administrativo expedito para fijar o modificar una pensión alimentaria a favor de los hijos menores, *inter alia*.

En cuanto a la notificación de la acción, el artículo 15 de la Ley de ASUME, 8 L.P.R.A. sec. 514, dispone:

> **(1)(a) Al radicarse en el tribunal una petición o escrito sobre la obligación de prestar alimentos a menores, . . .,** y la parte promovida resida en el Estado Libre Asociado de Puerto Rico, **el secretario del tribunal procederá de inmediato a señalar la vista ante el Examinador para una fecha dentro de un plazo no menor de quince (15) días ni mayor de veinte (20) días, contados desde la fecha de radicación de la petición y expedirá, no obstante lo establecido por las Reglas de Procedimiento Civil, Ap. III del Título 32, un documento de notificación personal y citación para vista, requiriendo a la parte promovida que muestre causa de por qué no debe dictarse una sentencia, resolución u orden según solicitado en la petición o escrito.**
> **(b) La notificación-citación, junto con una copia de la petición, deberá ser diligenciada o notificada por la parte promovente con no menos de cinco (5) días de antelación a la fecha de la vista enviándola a la parte promovida, por correo certificado con acuse de recibo a su dirección, si ésta es conocida,** estableciendo este conocimiento mediante declaración jurada al efecto; **al momento de presentar la petición; o personalmente mediante el procedimiento utilizado para el diligenciamiento de emplazamientos. En los casos en que hayan transcurrido dos (2) años o más desde la última orden sobre pensión alimenticia, durante los cuales no se haya suscitado incidente judicial alguno entre las partes, se notificará la acción mediante el procedimiento utilizado para el diligenciamiento personal de emplazamientos. Cuando se desconozca la dirección del alimentante o éste no pueda ser localizado, se citará para vista mediante la publicación de un edicto en un periódico de circulación general diaria en Puerto Rico.** (Énfasis suplido.)

Como puede observarse, la Ley de ASUME requiere que la parte promovida resida en Puerto Rico para que se pueda solicitar o modificar una pensión alimentaria mediante el procedimiento administrativo expedito. Ello es así, ya que cuando se trata de demandados o reclamados que no residan en Puerto Rico se establecen unos requisitos mínimos para que los tribunales asuman jurisdicción sobre éstos. Respecto al método utilizado para emplazar, se requiere que éste tenga una probabilidad razonable de notificar e informar al reclamado sobre la acción presentada en su contra, de manera tal que pueda comparecer a defenderse si así lo desea. *Pou v. American Motors Corp.*, 127 D.P.R. 810, 819 (1991); *además*, *Peguero y otros v. Hernández Pellot*, *supra*, a la pág. 499; *Granados v. Rodríguez Estrada II*, 124 D.P.R. 593 (1989); *Rodríguez v. Nasrallah*, *supra*.

Hemos de notar que el método expedito para emplazar provisto por el procedimiento en cuestión no cumple con el requisito antes mencionado, razón por la cual entendemos que el legislador limitó el mismo a aquellas situaciones en las cuales la parte promovida reside en Puerto Rico. Conforme al artículo 15 de la Ley de ASUME, *supra,* el (la) secretario(a) del tribunal deberá señalar una vista ante el Examinador para una fecha dentro de un plazo no menor de quince (15) días ni mayor de veinte (20), contados a partir de la fecha en que se presentó la petición de alimento. Además, la disposición concernida permite que la notificación-citación pueda ser diligenciada o notificada por la parte promovente cinco (5) días antes de la vista señalada. *Íd.* A todas luces ello imposibilitaría que la parte promovida que no resida en Puerto Rico pueda defenderse adecuadamente.

Según señala la profesora Sarah Torres Peralta, en aquellos casos en los cuales el alimentante reside fuera de Puerto Rico "el examinador está impedido de atender la controversia alimentaria."[10]  Lo que implica que el asunto debe ser atendido directamente por el foro judicial.

En vista de que la pensión original fue establecida por el Tribunal del Condado de Dade en Florida y dado que el peticionario reside en el referido estado, la recurrida estaba impedida de utilizar el procedimiento administrativo expedito. La recurrida tenía a su haber la Ley Núm. 71 de 20 de junio de 1956, 32 L.P.R.A. sec. 3311 *et seq.*, antes conocida como la Ley de Reciprocidad para la Ejecución de Obligaciones sobre Alimentos (en adelante LREOA). La misma fue derogada mediante la Ley Núm. 180 de 20 de diciembre de 1997, 8 L.P.R.A. sec. 541 *et seq.*, conocida como la Ley Interestatal Uniforme de Alimentos entre Parientes (en adelante LIUAP).[11] Tanto la LIUAP como la LREOA fueron aprobadas con el propósito de viabilizar el reclamo de alimentos entre parientes cuando el obligado a proveerlos reside fuera de Puerto Rico.

C.

---

[10] S. Torres Peralta, *La Ley Especial de Sustento de Menores y el Derecho de Alimentos en Puerto Rico,* San Juan, Publicaciones STP, Inc. 1997, sec. 4.10.

[11] Al presentarse la petición de alimentos en 1995 y al dictarse sentencia en 1996, aún estaba vigente la LREOA, según enmendada.  Sin embargo, según resolviéramos en *Aponte v. Barbosa Dieppa*, res. el 24 de julio de 1998, 146 D.P.R. __, 98 TSPR 113, 98 JTS 105, la LIUAP debe aplicarse retroactivamente y constituye el derecho aplicable en todos los casos pendientes, anteriores y posteriores al 1ro de julio de 1995.

A tenor del artículo 1, sec. 2.205 de la LIUAP, 8 L.P.R.A. sec. 542d, el tribunal que emite una orden de pensión alimentaria tendrá jurisdicción continua y exclusiva sobre dicha orden.  Un tribunal de Puerto Rico podrá modificar una orden de pensión emitida por otro estado, siempre y cuando no sea aplicable el art. 1, sec. 6.613 de la LIUAP, 8 L.P.R.A. sec. 547d, y, luego de cumplir con el requisito de notificación y vista, determine que:

(1) Los siguientes requisitos se han cumplido:

(A) El menor, el alimentista y el alimentante no residen en el estado que remite la orden;

(B) el peticionario, quien no es residente de Puerto Rico, solicita que se modifique la orden, y

continúa...
... [11] continuación

(C) el demandado está sujeto a la jurisdicción del tribunal de Puerto Rico; o

(2) el menor o una de las partes está sujeto a la jurisdicción sobre la persona del tribunal de Puerto Rico y todas las partes han presentado por escrito su consentimiento en el estado que emitió la orden para que el tribunal de Puerto Rico pueda modificar la orden de pensión alimentaria y asumir jurisdicción continua y exclusiva sobre la misma....

Al presentarse en 1995 la petición para que se revisara y aumentara la pensión establecida por el Tribunal del condado de Dade en Florida, el peticionario se encontraba residiendo en el referido estado. Este hecho era conocido por la recurrida. Aun así, se emitieron cinco notificaciones conforme al procedimiento administrativo expedito establecido por la Ley de ASUME, *supra*.

Como indicáramos anteriormente, el procedimiento administrativo expedito requiere que la parte promovida resida en Puerto Rico. Conforme a las normas jurídicas antes esbozadas y a los hechos del caso de autos, salta a la vista que el TPI nunca asumió jurisdicción sobre el peticionario durante el proceso iniciado en 1995, el cual finalizó con una sentencia mediante la cual se aumentó la cantidad que éste venía obligado a pagar por concepto de pensión alimentaria a favor su hijo.  El procedimiento utilizado por la recurrida fue reservado por el legislador sólo para aquellos casos en los cuales la parte promovida resida en Puerto Rico, por lo que su utilización en situaciones como la de autos viola las garantías constitucionales sobre el debido proceso de ley.[12]

Ya que nunca se asumió jurisdicción sobre el peticionario, todo el trámite subsiguiente fue efectuado sin autoridad alguna, entiéndase las actuaciones de la Examinadora y las del TPI.  A tenor de nuestra jurisprudencia respecto a la validez de una sentencia emitida sin que el tribunal haya asumido jurisdicción sobre el reclamado, resolvemos que la sentencia emitida en 1996 adolece de nulidad radical, y por consiguiente inexistente en derecho.[13]

Aun cuando concluimos que la sentencia dictada por el TPI en 1996 es inexistente en derecho, debemos señalar que de haber resuelto lo contrario, la misma no surtió efecto, por lo que no podía ser ejecutada.  Según indicáramos anteriormente, "[l]a correcta notificación de una sentencia es característica imprescindible del debido proceso judicial." *Rodríguez Mora v. García*, *supra,* a la pág. 353; *además, Medio Mundo, Inc. v. Rivera*, *supra*; *Martínez, Inc. v. Abijoe Realty Corp.*, *supra*. Cuando una sentencia no es notificada a una de las partes, ésta no tiene efecto alguno e impide que pueda ser ejecutada, evitando a su vez que comiencen a correr los términos para procedimientos post-sentencia.  *Medio Mundo, Inc. v. Rivera*, *supra*; *Martínez, Inc. v. Abijoe Realty Corp.*, *supra*; *Falcón Padilla v. Maldonado Quirós*, *supra*; *Pueblo*

---

De no cumplirse con los requisitos de la disposición antes citada, los tribunales de Puerto Rico carecerían de jurisdicción para modificar la orden de pensión alimentaria emitida por otro estado.

[12] Debemos añadir que aún si fuera apropiado en este caso, que no lo es, utilizar el procedimiento administrativo expedito, tampoco se cumplieron los requisitos que establece el artículo 15 de la Ley de ASUME, *supra*. El citado artículo requiere que la parte promovente haga constar mediante declaración jurada su conocimiento respecto a la dirección de la parte promovida, requerimiento que resulta necesario para establecer de antemano si mediante el procedimiento administrativo expedito puede asumirse jurisdicción sobre el reclamado. No encontramos en autos que dicho requerimiento se haya cumplido.

[13] Aun si el tribunal hubiese asumido jurisdicción sobre el peticionario, entendemos que dado el hecho de que la LIUAP debe ser aplicada retroactivamente, conforme a lo resuelto en *Aponte v. Barbosa Dieppa*, *supra*, el foro de instancia

*v. Hernández Maldonado*, 129 D.P.R. 472, 486 (1991); *Asociación Cooperativa v. Navarro*, 70 D.P.R. 929 (1950).

IV

Debemos ahora determinar si hubo una sumisión voluntaria del peticionario y si la estipulación respecto al pago de la pensión es válida.  Ello debemos de analizarlo a la luz del procedimiento seguido desde el momento en que el TPI ordenó el arresto del peticionario.

A.

El desacato civil es el mecanismo mediante el cual los tribunales obligan a que se cumpla con una orden emitida cuando la parte obligada por la misma ha hecho caso omiso de ésta. Anteriormente hemos señalado que, el desacato civil tiene un propósito eminentemente reparador. *Pueblo v. Barreto Rohena*, res. el 4 de noviembre de 1999, 149 D.P.R. __, 99 TSPR 169, 99 JTS 172; *In re: Hon. Charlie Rodríguez*, res. el 30 de junio de 1999, 148 D.P.R. __, 99 TSPR 104, 99 JTS 110; *Srio. D.A.C.O. v.Comunidad San José, Inc.*, 130 D.P.R. 782, 804 (1992).

Como excepción a la prohibición constitucional contra el encarcelamiento por deuda, el tribunal puede ordenar el encarcelamiento por desacato civil por incumplimiento de una pensión alimentaria.  No obstante, si el obligado a pagar demuestra que el incumplimiento con el pago de la pensión se debe a una causa justificada, no procederá la imposición de esta medida extrema. *Srio. D.A.C.O. v. Comunidad San José, Inc.*, *supra*, a la pág. 805; *Espinosa v. Ramírez, Alcaide de Cárcel*, 72 D.P.R. 901, 906 (1951); *Munet v. Ramos*, 69 D.P.R. 353 (1948); *Rivera v. Torres*, 56 D.P.R. 583, 585 (1940); *Villa v. Corte*, 45 D.P.R. 879, 900 (1933).

Por imperativo del debido proceso de ley, cuando una persona es arrestada se requiere que éste sea llevado de inmediato ante un magistrado o juez.  Máxime cuando la orden de arresto está basada en un alegado incumplimiento con el pago de una pensión alimentaria, y el propósito del desacato civil es uno reparador, es decir que se pague la deuda alimentaria.  "[A]un en los casos de alimentos existen situaciones en que la prohibición constitucional [contra el encarcelamiento por deuda] prevalecerá; en esas situaciones, el desacato civil ha perdido su razón de ser y la balanza de intereses se inclina a favor de la prohibición constitucional." *Srio. D.A.C.O. v. Comunidad San José, Inc.*, *supra*, a la pag. 805.

El peticionario fue arrestado el 10 de marzo de 2000, y no fue llevado ante el TPI hasta el 13 de marzo de 2000.  Es evidente que al peticionario le fueron negadas las garantías mínimas del debido proceso de ley.  De esta manera el TPI abandonó el propósito reparador del mecanismo de desacato y utilizó el mismo como una medida punitiva.  El peticionario debió haber sido llevado de inmediato ante un magistrado o juez y no posponer la vista hasta el 13 de marzo de 2000.  Los tribunales deben recordar que al igual que el derecho a recibir alimentos, la libertad constituye un derecho fundamental constitucionalmente protegido.

---

carecía de jurisdicción para modificar la pensión establecida por el condado de Dade en Florida.

Entendemos que, siendo el desacato civil la excepción a la norma, en casos como el de autos en el cual no se había efectuado una gestión previa válida para exigir el cobro de la pensión, los tribunales no pueden hacer uso de su autoridad indiscriminadamente y ordenar el arresto de una parte sin que éste tenga la oportunidad de defenderse. En situaciones como ésta, los tribunales deben celebrar una vista antes de recurrir al mecanismo del desacato civil.

B.

Tanto el TPI como el TCA concluyeron que hubo una sumisión voluntaria del peticionario, por éste haber estipulado el pago de la pensión y por no haber impugnado la jurisdicción del tribunal en la vista celebrada el 13 de marzo de 2000.

Conforme a nuestra jurisprudencia, "[l]a figura de la sumisión consiste en que una parte comparece voluntariamente y realiza algún acto sustancial que la constituya parte en el pleito, sometiéndose así a la jurisdicción del Tribunal." *Qume Caribe, Inc. v. Srio de Hacienda*, res. el 30 de marzo de 2001, 153 D.P.R. __, 2001 TSPR 38, 2001 JTS 41; *Mercado v. Panthers Military Society*, 125 D.P.R. 98 (1990); *Echevarría Jiménez v. Sucesión Pérez*, 123 D.P.R. 664 (1989). Así, la comparecencia voluntaria del demandado suple la omisión del emplazamiento y es suficiente para que el tribunal asuma jurisdicción sobre su persona. *Qume Caribe, Inc. v. Srio de Hacienda*, *supra*; *Franco v. Corte*, 71 D.P.R. 686 (1950); *Méndez v. Secesión Sella*, 62 D.P.R. 345 (1943).

El caso de autos presenta una situación fáctica muy particular, por lo que el mero hecho de que el peticionario haya estipulado el asunto medular en esta controversia no conlleva por sí solo una sumisión ante el TPI. La vista celebrada es consecuencia de una sentencia que adolece de nulidad absoluta de la cual el peticionario no tuvo conocimiento alguno. El peticionario fue arrestado un viernes en la tarde, unos días antes de partir junto a su esposa al estado en que residen, y permaneció encarcelado todo un fin de semana sin la oportunidad de ser llevado ante un magistrado. Además, nunca fue considerado el recurso de hábeas corpus presentado por su esposa. A estas circunstancias se une el hecho de que tanto el peticionario como su representación legal advinieron en conocimiento del aumento de pensión en la propia vista. Aún más, surge que al celebrarse la vista el peticionario no había tenido oportunidad de revisar el expediente del caso. Además, el TPI fue enfático en cuanto al ánimo y propósito de la vista, es decir que se pagara la deuda aun cuando había quedado establecido de forma clara que el peticionario nunca fue notificado de la sentencia mediante la cual se decretó el aumento de pensión alimentaria.

Conforme a las circunstancias particulares antes señaladas, entendemos que la comparecencia del peticionario no puede ser considerada como una voluntaria. Además, una persona de inteligencia promedio ante manifestaciones de un tribunal en situaciones como la de autos razonablemente podría concluir que de no pagar la deuda según lo ha requerido el tribunal permanecería encarcelado.

Respecto a la determinación de que el peticionario renunció a sus defensas de falta de jurisdicción, diferimos.  Si bien es cierto que una parte renuncia a las defensas afirmativas si no las levanta en la primera oportunidad para hacerlo, también es cierto que dicha norma no es absoluta.  ¿Cómo puede ser posible que una parte presente todas sus defensas afirmativas en una vista a la que ha sido llevado obviando el debido proceso de ley, sin que previamente se le haya informado en qué consisten los reclamos en su contra y sin que siquiera tuviera conocimiento de las defensas a su haber por razón de no haber revisado los autos del caso en el que nunca ha sido parte?  Ante los hechos del caso de autos, concluir que el peticionario renunció a sus defensas constituiría una herida profunda a los postulados sobre el debido proceso de ley y haríamos de los procedimientos ante los tribunales una camisa de fuerza, maculando de esta manera el propósito de hacer justicia.

Además, reiteradamente hemos indicado que los tribunales debemos ser celosos en cuanto al ejercicio de nuestra jurisdicción. *Juliá Padró v. Epifanio Vidal, S.E.*, res. el 14 de febrero de 2001, 153 D.P.R. __, 2001 TSPR 15, 2001 JTS 18, pág. 844. Véase, además; *Vázquez v. A.R.P.E.*, 128 D.P.R. 153 (1991); *Martínez v. Junta de Planificación*, 109 D.P.R. 839 (1980); *Sociedad de Gananciales v. A.F.F.*, 108 D.P.R. 644 (1979).  Entendemos que al quedar establecido de forma clara que la sentencia no le fue notificada al peticionario, el TPI debió percatarse que carecía de jurisdicción para entender en el asunto.  Un tribunal no puede ejecutar lo inejecutable y mucho menos lo inexistente. Mediante una vista de desacato civil no es posible que se pueda convalidar una sentencia que es inexistente en derecho y mucho menos pretender sanar los problemas de falta de jurisdicción en un proceso que ya finalizó.

V

Dicho lo anterior, resolvemos que la Sentencia emitida el 14 de octubre de 1996 por el Tribunal de Primera Instancia es inexistente en derecho por haber sido emitida sin que previamente se asumiera jurisdicción sobre Miguel Arias Ferrer.  De igual forma, todos los procedimientos post-sentencia se efectuaron sin jurisdicción.

Por las razones que anteceden, revocamos el dictamen del Tribunal de Circuito de Apelaciones y la Resolución y Orden emitida el 1 de noviembre de 2000 por el Tribunal de Primera Instancia.  Dejamos sin efecto todas las órdenes emitidas por el Tribunal de Primera Instancia en el caso de autos.

Se devuelve el caso al foro de instancia para que brinde a la parte recurrida la oportunidad de emplazar al peticionario conforme proceda en derecho; inicie el procedimiento de registro de la orden de alimentos dictada en el Condado de Dade, Florida; remita la petición original de modificación de pensión presentada por la recurrida al tribunal con jurisdicción en el estado de Florida y resuelva según en derecho proceda de conformidad con lo aquí resuelto.

Se dictará sentencia de conformidad.

BALTASAR CORRADA DEL RÍO
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Mildred Álvarez Elvira

    Recurrida

       v.                            CC-2001-310

Miguel Arias Ferrer

    Peticionario


**SENTENCIA**


**San Juan, Puerto Rico a 18 de marzo de 2002.**


**Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca el dictamen del Tribunal de Circuito de Apelaciones y la Resolución y Orden emitida el 1 de noviembre de 2000 por el Tribunal de Primera Instancia. Se dejan sin efecto todas las órdenes emitidas por el Tribunal de Primera Instancia en el caso de autos.**

**Se devuelve el caso al foro de instancia para que brinde a la parte recurrida la oportunidad de emplazar al peticionario conforme proceda en derecho; inicie el procedimiento de registro de la orden de alimentos dictada en el Condado de Dade, Florida; remita la petición original de modificación de pensión presentada por la recurrida al tribunal con jurisdicción en el estado de Florida y resuelva según en derecho proceda de conformidad con lo aquí resuelto.**

**Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Fuster Berlingeri disiente con opinión escrita. El Juez Presidente señor Andréu García no intervino.**


                             **Carmen E. Cruz Rivera**
                  **Secretaria del Tribunal Supremo Interina**

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Mildred Alvarez Elvira

     Recurrida

        vs.                                   CC-2001-310        Certiorari

Miguel Arias Ferrer

     Peticionario

**Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI.**

San Juan, Puerto Rico, a 18 de marzo de 2002.

Estoy de acuerdo con la mayoría del Tribunal en cuanto a que en el caso de autos el foro de instancia inicialmente no tenía jurisdicción sobre el peticionario para hacer valer la sentencia emitida el 14 de octubre de 1996, mediante la cual se aumentó sustancialmente la pensión alimentaria que el peticionario debía pagar en favor de su hijo. Como esa sentencia no se le notificó al peticionario, el tribunal de instancia originalmente no tenía jurisdicción sobre éste para su ejecución judicial.

Ahora bien, tanto el foro de instancia como el foro apelativo resolvieron que el peticionario **se sometió tácitamente para esos fines a la jurisdicción del Tribunal de Primera Instancia.** Para precisar si

esta crucial determinación de los foros a quo fue correcta o no, es necesario precisar los hechos del caso, añadiendo algunos que no están relatados en la opinión de la mayoría.

Al peticionario aquí le fue entregada personalmente una notificación-citación el 31 de mayo de 1996 mediante la cual se le informaba que el 12 de junio de 1996 se celebraría una vista para dilucidar una solicitud de aumento de la pensión alimentaria que éste debía pagarle a su hijo menor de edad, por lo que se le requería su presencia en dicha vista. El peticionario **no compareció** a la vista referida ni envió un representante legal suyo a ésta.

La vista referida se celebró. La madre del menor, que había solicitado el aumento en la pensión, presentó allí prueba documental y testifical en apoyo de su solicitud, por lo que el 14 de octubre de 1996 el tribunal de instancia dictó una sentencia y aumentó la pensión referida de $200 mensuales a la cantidad de $1,000 mensuales. Por error del tribunal, dicha sentencia le fue notificada a una abogada de record, que luego resultó ser la representante legal de la propia madre. Por ende, el peticionario nunca pagó el aumento en la pensión.

Así las cosas, a principios de marzo de 2000, el referido peticionario se encontraba de vacaciones en Puerto Rico. Al enterarse de ello la madre recurrida, ésta acudió el 9 de marzo ante el foro de instancia, Sala Superior de Carolina, y alegó: 1) que el peticionario adeudaba más de $42,400 en pensiones sin pagar; 2) que personalmente y a través de ASUME se había procurado el pago en cuestión en muchas ocasiones sin éxito alguno; 3) que el peticionario se encontraba en Puerto Rico, hospedado en el Hotel El Conquistador pero que se iba de la Isla el 13 de marzo de regreso a su residencia en el Estado de la Florida. El mismo 9 de marzo de 2000, que era un jueves, el foro de instancia emitió una orden de arresto y encarcelamiento contra el peticionario. Al día siguiente, el viernes 10 de marzo, el peticionario fue arrestado y encarcelado.

El siguiente lunes 13 de marzo, el peticionario fue llevado ante el foro de instancia para la celebración de la vista correspondiente. **Compareció representado** por **dos abogados**, los licenciados Edgardo Pérez Viera y Tomás Colón Vázquez.

Según surge de la transcripción de la vista que consta en autos, los dos letrados que representaban al peticionario **no plantearon de modo alguno** la ausencia de jurisdicción del tribunal sobre la persona del peticionario. Su señalamiento más bien fue **sólo a los efectos** de que el peticionario no conocía que se le había aumentado la pensión. **Se admitió que se conocía que había ocurrido un procedimiento judicial para la revisión de la pensión** pero se insistió en que no se le había notificado el dictamen judicial sobre el aumento en cuestión. La Juez del Tribunal de primera instancia entonces respondió a este planteamiento indicando que **del expediente surgía que la sentencia aumentando la pensión se le había notificado a la abogada de record del peticionario**. El Lcdo. Pérez Viera seguidamente aclaró que esa no era la abogada del peticionario sino la de la madre del menor.

La Juez, evidentemente sorprendida por este dato, volvió a inquirir si la abogada referida era la representante legal de la madre, lo cual fue reafirmado por el Lcdo. Pérez Viera.

En el proceso de aclarar el asunto de la falta de notificación de la sentencia, uno de los abogados del peticionario afirmó que el peticionario no estaba allí para negar la responsabilidad por la cantidad que se adeudaba sino sólo para dejar claro que éste no había sido notificado de la sentencia referida. Más adelante, dicho abogado, en lugar de plantear la falta de jurisdicción del tribunal, le indicó a éste más bien que se **había llegado a un acuerdo** con la madre del menor. Añadió que se **reconocía que existía una deuda** y que **ésta se iba a pagar**. La Juez indagó entonces que cómo era que se iba a pagar y el abogado del peticionario respondió que **"a eso era que queríamos entrar"**. Los abogados del peticionario procedieron entonces a **explicarle al tribunal la estipulación acordada antes con la madre del menor**.

De los hechos antes relatados, surgen varias conclusiones innegables. En primer lugar, está claro que el foro de instancia ordenó el arresto y la encarcelación del peticionario actuando bajo la impresión de que éste **conocía** la orden judicial de aumento de pensión y la había ignorado por varios años. El tribunal evidentemente pensaba que el peticionario había desacatado una orden judicial válida, en grave detrimento de un menor, y que existía el riesgo de que dicho deudor se ausentara de Puerto Rico antes de poder dilucidarse el asunto.

En segundo lugar, durante la extensa vista del lunes 13 de marzo de 2001, que fue la primera ocasión que hubo para dilucidar la falta de pago de la deuda alimentaria, los abogados del peticionario tuvieron amplia oportunidad de plantearle al tribunal su falta de jurisdicción sobre éste y de hacerle claro que no se sometían a su jurisdicción, **pero no lo hicieron en ningún momento**. Por el contrario, y en tercer lugar, dichos abogados llegaron **por su cuenta** y **antes de la vista**, a una transacción con la madre sobre la deuda pendiente; y en la vista voluntariamente hicieron hincapié en que sí existía la deuda, en que habría de pagarse, y en que se había estipulado ya con la madre una forma de hacer el pago.

Es necesario enfatizar que la aceptación de la deuda, y la estipulación sobre el pago lo iniciaron y lo acordaron el peticionario y sus abogados **sin intervención alguna del tribunal**. De ningún modo fueron tales decisiones sugeridas o propiciadas por el tribunal. No hay nada en la transcripción de la vista referida que pueda dar lugar a la noción de que la Juez de instancia conminó al peticionario de alguna manera a que tomara esas decisiones.

A la luz de lo anterior, parece claro que estuvo justificado que los foros a quo concluyeran ambos que el peticionario se sometió a la jurisdicción del foro de instancia para el asunto del pago de la deuda alimentaria en cuestión. Ello, según se ha señalado ya, en vista de que el peticionario no levantó en ningún momento la defensa de falta de

jurisdicción sobre su persona, a pesar de tener amplias oportunidades de hacerlo; y en vista además de que el peticionario no sólo admitió la existencia de la deuda en cuestión sino que procedió también **antes de la vista judicial** a estipular con la madre la deuda alimentaria reclamada, y su forma de pago. Se trata, pues, de **varios actos** del peticionario tomados por su cuenta, que demostraban su interés en resolver definitivamente en el tribunal el asunto de las pensiones pendientes.

La mayoría de este Tribunal en su opinión reconoce el conocido principio jurídico de que una parte renuncia a las defensas afirmativas si no las levanta en la primera oportunidad que tiene para hacerlo. No obstante, la mayoría concluye que aquí no hubo la referida renuncia y que no ocurrió la sumisión voluntaria en cuestión porque el peticionario supuestamente no podía presentar sus defensas afirmativas en una vista **a la que había sido llevado sin haberse cumplido con el debido proceso de ley**.

No puedo estar de acuerdo con este dictamen mayoritario. Como ya se ha señalado, el peticionario **tuvo adecuada representación legal en el procedimiento en cuestión**. No se encontraba indefenso. Tenía dos abogados, por lo que estaba en posición de hacer todos los planteamientos al tribunal que fuesen procedentes. **El que no se hizo fue el de cuestionar la jurisdicción del tribunal**.

Por otro lado, me preocupa el efecto que pueda tener el dictamen de la mayoría de este Tribunal de justificar el incumplimiento con la obligación de presentar las defensas afirmativas oportunamente, a base de que el tribunal de instancia había errado previamente. Defensas como la que aquí nos concierne se deben presentar de inmediato precisamente para cuestionar un proceder judicial previo que fue supuestamente errado. Dicho proceder judicial debe impugnarse en la primera ocasión que se presente, **para evitar que el foro judicial continúe adelante con un proceso viciado**. Si se convalida la omisión de levantar la defensa recurrida oportunamente, como hace la mayoría aquí, se derrota el propósito mismo que persigue la norma que requiere que dicha defensa se levante de inmediato. El efecto neto en términos prácticos, es el de derogar la norma en cuestión, abriendo así las puertas a que el tribunal no sea advertido oportunamente de su error, y por ello no lo corrija a tiempo.

Hay algo más que me preocupa con respecto al visto bueno que le da la mayoría a la noción de que la sumisión en este caso no fue voluntaria. Es como decir que el foro judicial a quo coaccionó al peticionario; o, lo que es igual, que la parte se sintió intimidada por el previo proceder judicial, **cuando aquí no hay evidencia objetiva alguna de ello**. Si un tribunal insiste en un proceder porque estima que es correcto pero en realidad no lo es, la obligación de la parte afectada y sus abogados es la de cuestionar tal proceder judicial respetuosa pero verticalmente. Si la parte o sus abogados no lo quiere hacer por pensar que ello es inconveniente, eso es problema de ellos. No puede concluirse que la renuencia de la parte o de sus abogados a reclamar un derecho porque lo estiman inconveniente

constituye una coacción o una intimidación de parte del tribunal. Difícilmente puede administrarse bien un sistema judicial si se consideran "involuntarias" las decisiones que toma una parte por su propio cálculo de lo que le conviene. Me sospecho que este dictamen de la mayoría va a dar lugar a serias complicaciones futuras, por sus implicaciones en cuanto a la presunta intimidación que provocan los actos judiciales. Sobre todo, no sabemos qué nuevas alegaciones se inventarán los padres encarcelados por no pagar sus deudas alimentarias para con sus hijos menores, o sus abogados, luego que este Tribunal le ha dado su visto bueno a la noción de que hay coacción judicial por el arresto del padre deudor.

II

Hay otro asunto en el caso de autos, **más importante que todo lo anterior**, que también motiva este disenso. El decreto de la mayoría del Tribunal de que no hubo sumisión voluntaria en el caso de autos tiene aun otra grave consecuencia. Se trata de una cuarta razón por la cual estimo desacertado lo que resuelve la mayoría aquí. Tiene que ver con el **balance** que debe hacer este Foro con respecto a intereses legítimos que pueden estar contrapuestos en algún caso ante nuestra consideración.

En este caso hay un menor involucrado, cuya adecuada pensión alimentaria durante los pasados siete años probable- mente se quedará en el aire debido al dictamen de la mayoría de este Tribunal, a pesar de que el padre deudor admitió judicialmente la existencia de la deuda alimentaria en cuestión. El interés legítimo del menor, que está subyacente en el caso de autos, no está adecuadamente atendido.

En su opinión la mayoría del Tribunal ordena finalmente que el caso debe volver al foro de instancia para que allí se resuelva lo que "en derecho proceda" con respecto a las cantidades ya consignadas por el peticionario para la pensión alimentaria referida. Sin embargo, como la mayoría ya antes ha declarado que son nulos todos los procedimientos de aumento de pensión instados por la madre en Puerto Rico, cualquier decisión que tome el foro de instancia sobre el particular, si alguna, sólo puede ser a los efectos de tramitar una nueva pensión **prospectivamente**. Ello significa que el peticionario puede retirar los casi **$58,000** que consignó mediante varios depósitos en la secretaría del foro de instancia por concepto de pensión alimentaria atrasada, o reclamar la devolución de la parte de ellos que haya sido cobrada. Al resolver la mayoría de este Foro que fueron nulos todos los procedimientos en el tribunal de instancia **y que no hubo sumisión voluntaria**, la situación necesariamente deja vigente sólo la orden del tribunal del Condado de Dade de la Florida de que el peticionario pague $200 mensuales como pensión alimentaria. Por todo el período desde el 4 de agosto de 1995, cuando la recurrida acudió inicialmente al Tribunal de Primera Instancia en Puerto Rico a solicitar un aumento en la pensión referida, hasta que el caso vuelva al foro de instancia aquí, **un período de casi siete años**, la pensión vigente es sólo de **$200** mensuales en lugar de los **$2,319.62** que la Examinadora de Pensiones finalmente

calculó que debía pagarse. Para mí, este resultado es inadecuado e injusto, y no responde a la fundamental política de esta jurisdicción de velar por el mejor bienestar del menor. Este resultado **no se evita** de modo seguro con la orden que emite la mayoría al final de su opinión, **que es claramente inconsistente con todo lo resuelto anteriormente en la misma opinión**, de que se le dé a la madre la oportunidad de emplazar al padre, y de que se registre y se remita la solicitud de aumento de pensión al tribunal de Florida. En vista sobre todo de la drástica y desacertada decisión de este Tribunal en <u>Aponte v. Barbosa</u>, 146 D.P.R. ___ (1998), 98 JTS 105, que la mayoría convalida en la nota al calce once de su opinión al decretar la nulidad de todo el procedimiento de aumento de pensión instado por la madre en Puerto Rico, la referida orden de la mayoría al final de su opinión puede ser inconsecuente. Dicha orden final, unida al mandato de que el foro de instancia resuelva "según en derecho proceda" puede resultar ser un confuso y fútil intento de evitar lo que luce como inevitable precisamente por razón de la nulidad de los procedimientos decretada antes. La única manera segura de resolver la injusticia con el menor es la de aceptar que hubo una sumisión del padre a la jurisdicción del foro de instancia, tal como lo decidieron los dos tribunales <u>a quo</u>. De esa manera, quedarían claramente subsanadas todas las deficiencias que hubiesen en los procedimientos en Puerto Rico, y se satisfacerían también las exigencias de la Ley Interestatal Uniforme de Alimentos entre Parientes, 8 L.P.R.A. sec. 541 <u>et seq</u>., aun según ésta fue interpretada en <u>Aponte v. Barbosa</u>, <u>supra</u>. De otro modo, el menor probablemente ha de quedarse sin el pago de los alimentos adeudados por casi siete años, referidos antes.

Este resultado que sería tan detrimental para el menor, surge del decreto mayoritario de que no hubo sumisión voluntaria aquí. Es la consecuencia más grave de la muy deliberada intención de la mayoría de "compensar" al peticionario por la supuesta grave injusticia que se cometió por el foro de instancia en su contra. En efecto, en el caso de autos, la mayoría del Tribunal resuelve que el foro de instancia erró gravemente al ordenar el encarcelamiento del peticionario, sin celebrarle una vista antes. Indica la mayoría en su opinión que el peticionario debió ser llevado de inmediato ante el juez el mismo día 10 de marzo cuando se ejecutó la orden de arresto y no esperar hasta el 13 de marzo para celebrar dicha vista. Por ende, concluye la mayoría, el foro de instancia "abandonó el propósito reparador del mecanismo de desacato y utilizó el mismo como una **medida punitiva**". (Énfasis suplido).

No puede dudarse que de ordinario no debe encarcelarse a un padre deudor sin antes haberle oído y haberle dado la oportunidad de explicar por qué ha incumplido con su deber. Lo hemos pautado así claramente antes. <u>Rodríguez Avilés v. Rodríguez Beruff</u>, 117 D.P.R. 616 (1986).

No obstante, también hemos resuelto que el deber moral y jurídico de los padres de proveer alimentos a sus hijos, que está revestido del más alto interés público, se origina

en un derecho fundamental de hondas raíces constitucionales y se funda en principios universalmente reconocidos de solidaridad humana y del derecho a la vida. Rodríguez v. Depto. Servicios Sociales, 132 D.P.R. 617 (1993). Por ello hemos recabado de los tribunales de instancia que intenten solucionar las contiendas de pensiones alimentarias con creatividad e imaginación y con un sentido de urgencia, Otero Fernández v. Alguacil, 116 D.P.R. 733 (1986); y le hemos reiterado a dichos foros su obligación de ser "fuertes y rigurosos en lograr que los padres cumplan con su deber [alimentario]". Valencia, Ex parte, 116 D.P.R. 909 (1986).

A la luz de lo anterior, cabe preguntarse si el foro de instancia de veras actuó de una manera tan crudamente errónea como lo caracteriza la mayoría del Tribunal en su opinión en el caso de autos. Como ya se ha señalado, el tribunal de instancia actuó pensando que tenía ante sí el caso de un padre que era un **deudor empedernido**, que se encontraba en la isla **momentáneamente**. El tribunal no podía limitarse a sólo citar al peticionario para una vista el lunes 13 de marzo, ya que éste había desatendido citaciones previas y existía el riesgo real de que abandonara el país sin acatar tal citación. El foro judicial emitió por ello una orden de arresto y encarcelamiento. Ello se hizo en la tarde de un jueves en Carolina. Dicha orden tenía que remitirse a algún alguacil o agente policiaco, para luego ser diligenciada en Fajardo, lo que implicaba poder localizar entonces al peticionario. El tribunal no tenía forma de saber cuándo en efecto se lograría el arresto ordenado, y era razonable suponer que sería en el fin de semana. Por ende, el lunes 13 de marzo era probablemente la primera ocasión que tendría el tribunal que emitió la orden para escuchar al peticionario.

Por lo anterior, para mí es cuestionable suponer—-como lo hace la mayoría del Tribunal aquí—-que el foro de instancia actuó deliberadamente con un **ánimo punitivo**. Es al menos igualmente posible que dicho foro sólo estaba intentando cumplir con su deber de ser riguroso en asegurar que el padre habría de comparecer judicialmente a explicar por qué no había atendido por tanto tiempo su obligación alimentaria.

De cualquier modo, aun si fuese enteramente claro que el foro de instancia cometió un error al encarcelar al peticionario por dos días sin haberlo escuchado antes, cabe preguntarse si tal error justifica la decisión de la mayoría de este Tribunal de paliar el error cometido decretando que la sumisión del peticionario fue involuntaria. Tal decisión significa que en este caso **los platos rotos los puede terminar pagando el menor**, quien es el único de todos los actores en este drama judicial que no es responsable de nada. No puedo estar de acuerdo con esta forma de "hacer justicia". No responde bien a nuestra responsabilidad en casos como el de autos de tomar en cuenta cómo se protegen mejor los vitales intereses del menor beneficiario de la pensión alimentaria.

**En resumen, pues, la mayoría de este Tribunal demuestra aquí un gran celo por proteger al peticionario en contra de una supuesta sumisión involuntaria pero no demuestra un celo**

comparable en cuanto a hacer valer en este caso el sagrado deber de los padres de alimentar a sus hijos adecuadamente. Tampoco le da peso adecuado al hecho de que el padre por su cuenta y libremente no sólo admitió que debía lo adeudado sino que además llegó a un acuerdo con la madre para pagarlo. Estas cruciales y válidas decisiones del padre pueden quedarse judicialmente en el aire también por el desbalanceado dictamen de la mayoría del Tribunal en este caso. Es particularmente por ello que disiento aquí.

Jaime B. Fuster Berlingeri
Juez Asociado