ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| CENTRO DE PERIODISMO INVESTIGATIVO, INC.<br><br>Parte Recurrida<br><br><br>v.<br><br><br>MANUEL CIDRE MIRANDA, en su capacidad oficial como Secretario del DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO; ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>Parte Peticionaria | TA2025AP00431 | *Apelación acogida como Certiorari,* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2024CV10050<br><br>Sala: 904<br><br>Sobre: Mandamus; Derecho constitucional de acceso a la información pública |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de octubre de 2025.

Compareció ante este Tribunal la parte peticionaria, el Departamento de Desarrollo Económico y Comercio (en adelante, "DDEC" o "Peticionario"), mediante un mal denominado recurso de apelación presentado el 10 de octubre de 2025. Nos solicitó la revocación de la *Resolución y Orden* (en adelante, "Resolución") emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "TPI"), el 30 de septiembre de 2025. A través del referido dictamen, el TPI halló al DDEC incurso en desacato y le impuso el pago de sesenta mil dólares ($60,000.00) como suma global de sanciones acumuladas y la cantidad de diez mil dólares ($10.000.00) en concepto de honorarios por temeridad.

Por los fundamentos que expondremos a continuación, *expedimos* el auto de *certiorari* ante nuestra consideración y *revocamos* la *Resolución* recurrida.

**I.**

El caso de autos tuvo su origen el 18 de octubre de 2024, con la presentación de una "**Petición de *Mandamus***" por parte del Centro de Periodismo Investigativo, Inc. (en adelante, "CPI" o "Recurrido") en contra del entonces secretario del DDEC, el Sr. Manuel Cidre Miranda, y el Gobierno de Puerto Rico (en adelante, "Estado") sobre acceso a la información pública. Mediante la misma, expresó que el 22 de abril de 2024, el periodista Luis J. Valentín Ortiz (en adelante, el "señor Valentín Ortiz") le envió un correo electrónico a la Lcda. Miriam W. Sánchez Arroyo (en adelante, "Lcda. Sánchez Arroyo"), al Lcdo. Bryan O' Neill (en adelante, "Lcdo. O' Neill') y a la Sra. Myriam Soto Pagán (en adelante, la "señora Soto Pagán"), (en adelante y en conjunto, "oficiales de información del DDEC"), con copia a la Sra. Brenda Vázquez Colón (en adelante, "señora Vázquez Colón"), Directora de Prensa del DDEC, mediante el cual solicitó la entrega de los nombres de las organizaciones sin fines de lucro que han recibido donativos de beneficiarios de la antigua Ley Núm. 22-2012, según enmendada, mejor conocida como la "Ley para Incentivar el Traslado de Individuos Inversionistas a Puerto Rico", 13 LPRA sec. 10851 *et seq.*, ahora Ley Núm. 60-2019, según enmendada, mejor conocida como "Código de Incentivos de Puerto Rico", 13 LPRA sec. 45001 *et seq.*, en los últimos cinco (5) años y la cantidad de dinero que había recibido cada una.

Indicó que, dos días después, el 24 de abril de 2024, la señora Vázquez Colón envió la información solicitada correspondiente al año 2022 mediante correo electrónico. Señaló que el señor Valentín Ortiz les agradeció por la información provista y les informó que quedaba pendiente de recibir la información para los años restantes. Explicó que, ante la falta de respuesta, el 27 de mayo de 2024, el señor Valentín Ortiz envió un nuevo correo electrónico a la señora Vázquez Colón para conocer el estado de su solicitud; sin embargo, no recibió respuesta alguna.

Adujo que ese mismo día el señor Valentín Ortiz envió un mensaje electrónico a la señora Vázquez Colón, con copia a los oficiales de información del DDEC, a través del cual solicitó la base de datos que se

realizó para el estudio "Performance of Economic Incentives: Data Assessment and Return on Investment (ROI) Analysis" (en adelante, "estudio económico"). Relató que el referido estudio económico y su correspondiente base de datos, fueron anunciados el 21 de mayo de 2024 durante una conferencia de prensa celebrada por el DDEC. Destacó que ningún representante del DDEC respondió a esta nueva solicitud. Esbozó que, ante la falta de respuesta a ambas peticiones, el 8 de julio de 2024, el señor Valentín Ortiz, envió, por conducto de su representación legal, una carta de seguimiento a la Lcda. Sánchez Arroyo, a la señora Vázquez Colón y a la señora Soto Pagán, mediante la cual les requirió la entrega de toda la información pendiente de divulgación en o antes del 22 de julio de 2024.

Manifestó que, el 10 de julio de 2024, la Lcda. Sánchez Arroyo acusó recibo de la comunicación de la representación legal del señor Valentín Ortiz y le indicó que ambas solicitudes se estarían trabajando bajo el número de la solicitud inicial. Expresó que, posteriormente la Lcda. Sánchez Arroyo solicitó un término adicional para entregar la información, específicamente hasta el 12 de agosto de 2024. Explicó que, ese mismo día, la representación legal del señor Valentín Ortiz respondió a la comunicación de la Lcda. Sánchez Arroyo, indicando que, si bien no tenían reparos con el término solicitado en lo relativo a la solicitud de la base de datos, sí lo tenían en cuanto a la lista de organizaciones sin fines de lucro que habían recibido donativos de individuos residentes inversionistas.

Señaló que, el 23 de julio de 2024, la señora Sánchez Arroyo envió una nueva comunicación indicando que el DDEC se encontraba todavía en proceso de recopilar el listado de las donaciones, el cual entregarían en formato digital tan pronto estuviera listo. Alegó que el 26 de agosto de 2024, la representación legal del señor Valentín Ortiz cursó una nueva comunicación a la Lcda. Sánchez Arroyo y a varios funcionarios del DDEC, mediante la cual les concedió un término final, vencedero el 30 de agosto de 2024, para entregar la información aún pendiente de divulgación. Por último, resaltó que, el 4 de septiembre de 2024, la Lcda. Sánchez Arroyo

envió un nuevo mensaje a la representación legal del señor Valentín Ortiz mediante el cual anejó la información relativa a los donativos realizados a entidades sin fines de lucro para el año 2021, e informó que aún se encontraban trabajando con la extracción de la data correspondiente al año 2020, así como con la información del Reporte de Incentivos.

En vista de lo anterior, le peticionó al foro de instancia que declarara "Ha Lugar" su petición y, en consecuencia, ordenara al DDEC a cumplir inmediatamente con su deber ministerial de entregar, libre de costo, la siguiente información: (1) el nombre de las organizaciones sin fines de lucro que habían recibido donativos de beneficiarios de la antigua Ley Núm. 22, *supra*, y la Ley Núm. 60, *supra*, en los años 2019, 2020 y 2023 y la cantidad de dinero para cada una, (2) la base de datos que se realizó para el estudio comercial y (3) un diccionario con los campos de información que contiene la base de datos.

Así las cosas, el 29 de octubre de 2024, el TPI emitió una *Orden de Mostrar Causa* mediante la cual le solicitó al DDEC que expusiera las razones por las cuales no debía concederse el remedio solicitado por el CPI en un término final de diez (10) días. Se le apercibió, además, que el no comparecer por escrito en el término especificado equivaldría a allanarse a las alegaciones del recurso presentado en su contra y, consecuentemente, conllevaría la concesión del remedio solicitado.

En respuesta a ello, el 8 de noviembre de 2024, el Peticionario presentó su "**Moción Mostrando Causa**" en la que argumentó que la base de datos solicitada por el Recurrido no podía producirse en su totalidad, puesto que contenía información confidencial. Igualmente, expresó que el caso de epígrafe era una secuela del pleito CPI v. Cidre Miranda y otros, Caso Núm. SJ2021CV02443, en el que el Tribunal ordenó la producción de los informes anuales radicados por individuos residentes inversionistas con cierta información suprimida. Manifestó que la depuración de esta información de la base de datos es un proceso arduo que tomaba mucho tiempo. Señaló, además, que durante los próximos meses se anticipaba que el proceso se demorara más de lo normal debido a que tanto la Oficina

de Incentivos como el DDEC estarían atravesando por el proceso de transición gubernamental. En armonía con ello, solicitó un término de noventa (90) días para concluir la producción de la totalidad de la información. Ese mismo día, el TPI concedió dicho término.

El 25 de noviembre de 2024, el CPI presentó una "**Solicitud de Reconsideración**" en la que sostuvo que, a diferencia del caso anterior, la base de datos contenía información sobre los tenedores de decretos bajo todos los programas de incentivos que administraba el DDEC. Afirmó que, en la medida en que una cantidad significativa de los tenedores fueran personas jurídicas y no personas naturales, éstos no estaban cobijados por las mismas normas de confidencialidad reconocidas por el foro de instancia en la *Sentencia* del caso anterior. Alegó que la información en cuestión no requería la revisión y entrega de decenas de miles de informes anuales de individuos inversionistas, sino de una base de datos que, por definición, era editable y reutilizable. En concordancia con lo anterior, le solicitó al foro de instancia que reconsiderara su *Orden* del 8 de noviembre de 2024 y ordenara al DDEC a entregar la información objeto del presente recurso en o antes del 9 de diciembre de 2024.

En este contexto, el 27 de noviembre de 2024, el TPI emitió una *Sentencia* en la que declaró "Ha Lugar" el *mandamus* presentado por el CPI, bajo el fundamento de que las personas jurídicas poseían una expectativa de intimidad limitada. Así pues, ordenó la entrega de la información de las organizaciones sin fines de lucro que habían recibido donativos de beneficiarios de la Ley Núm. 22, *supra*, y la Ley Núm. 60, *supra*, la cantidad de dinero que cada una recibió de los últimos cinco (5) años y la entrega de la base de datos que se realizó para el estudio comercial en un término de cuarenta y cinco (45) días, protegiendo la divulgación de información personal de las personas naturales tenedores de los decretos.

Posteriormente, el 24 de enero de 2025, el CPI presentó una "**Solicitud de Orden de Desacato y Cumplimiento de Sentencia**" en el que alegó que el término concedido por el foro primario para entregar la

información solicitada había transcurrido sin que el DDEC hubiera provisto documento alguno. Destacó que el Peticionario había contado con doscientos setenta y siete (277) días para entregar la referida información. Además, afirmó que tal omisión había vulnerado severamente los derechos constitucionales al acceso a la información y a la libertad de prensa y expresión que le asisten. El 27 de enero de 2025, el TPI le concedió un término de cinco (5) días al DDEC para mostrar causa por la cual no se debía encontrar incurso en desacato.

Más adelante, el 6 de febrero de 2025, el CPI presentó una "**Moción Reiterando 'Solicitud de Orden de Desacato y Cumplimiento de Sentencia'**" a través de la cual informó que el DDEC aún no había cumplido con lo ordenado por el TPI, a pesar de haber transcurrido doscientos noventa (290) días y de haber sido advertido que de no proveer la información en cuestión sería hallado incurso en desacato. En vista de lo anterior, le peticionó nuevamente al Tribunal que impusiera la sanción solicitada.

Así las cosas, el 18 de febrero de 2025, el Peticionario presentó una "**Moción en Cumplimiento de Orden**" mediante la cual solicitó un término adicional de diez (10) días para entregar la información sobre los nombres de las organizaciones sin fines de lucro que habían recibido donativos de la antigua Ley Núm. 22, *supra*, y la Ley Núm. 60, *supra*. En cuanto a la solicitud de la producción de la información sobre la base de datos que se realizó para el estudio comercial, explicó que la misma fue referida a la empresa Abexus por haber estado a cargo de la recopilación de la información de dicho informe. Arguyó que lo solicitado por el CPI no había podido ser producido porque no existía una base de datos asociada al estudio comercial, pues la información utilizada para su elaboración fue obtenida de múltiples fuentes, tales como el Departamento de Hacienda, el Centro de Recaudación de Ingresos Municipales (en adelante, el "CRIM"), y otras agencias gubernamentales. En consonancia con lo anterior, le solicitó al foro *a quo* la celebración de una vista con el fin de que las partes

pudieran dialogar y exponer las medidas a seguir para viabilizar el cumplimiento de la *Sentencia* dictada el 27 de noviembre de 2024.

El 28 de febrero de 2025, el CPI presentó una "**Moción en Torno a Moción en Cumplimiento de Orden y Reiterando Solicitud de Orden de Desacato y Cumplimiento de Sentencia**" en la que alegó que el DDEC aún no había cumplido con lo ordenado por el Tribunal. Así pues, solicitó nuevamente que dicha parte fuera incursa en desacato. Además, peticionó que se fijara una multa diaria no menor de trescientos dólares ($300.00) a su favor, hasta que se diera el cumplimiento específico de la *Sentencia* en cuestión.

El 4 de marzo de 2025, tras la celebración de una vista y de escuchar los planteamientos de ambas partes, el TPI le concedió al DDEC un término final de treinta (30) días para producir la información, según fue solicitada. Impuso, además, el pago de cinco mil dólares ($5,000.00) de sanciones diarias en concepto de honorarios de abogado en favor del CPI, a partir del 2 de abril de 2025, hasta que cumpliera con la entrega de la información. El 26 de marzo de 2025, el DDEC presentó una "**Moción Informativa**" en la que informó que le envió al CPI la información solicitada correspondiente a los años 2019 y 2023. El 1 de abril de 2025, el DDEC presentó una "**Moción Aclaratoria**" en la que indicó que el término de treinta (30) días dispuesto en la *Sentencia* concluía el 3 de abril de 2025 y no el 2 de dicho mes y año.

El 3 de abril de 2025, DDEC presentó una "**Moción Asumiendo Representación Legal y en Cumplimiento de Sentencia**" en la cual aclaró que el análisis del impacto económico no se generó a partir de una base de datos formal, sino mediante la recopilación y el procesamiento de información proveniente de diversas fuentes. Manifestó que no se trataba de información que se encontraba en una tabla o programa unificado específico. Afirmó que contaba con una compilación de la información pública asociada a los beneficiarios de decretos o exenciones bajo el Código de Incentivos y que le enviaron un enlace al CPI para acceder a dicha información. Asimismo, detallaron que el enlace provisto contenía los

nombres y/o entidades a favor de quien se emitieron los decretos y la fecha en que se aprobaron. Alegaron que cualquier otra información que el DDEC poseía respecto a estas personas y/o entidades constituía información financiera y/o tributaria o un secreto de negocio bajo la Ley Núm. 80-2011, mejor conocida como "Ley para la Protección de Secretos Comerciales e Industriales de Puerto Rico", 10 LPRA sec. 4131 *et seq.,* que estaba impedido de proveer. En vista de lo anterior, le solicitó al foro recurrido que diera por cumplida la *Sentencia*.

El 9 de julio de 2025, el CPI presentó una "**Tercera Moción Reiterando Solicitud de Orden de Desacato y cumplimiento de Sentencia**" en la que alegó que la información compartida por el DDEC no era responsiva a la solicitud que le fue cursada el 27 de mayo de 2024. Afirmó que los planteamientos de confidencialidad invocados por el DDEC eran inmeritorios y que la mayoría ya fueron adjudicados en un litigio anterior entre las partes. Asimismo, adujo que el Peticionario no había descargado su peso constitucional de demostrar que la Sección 1000.4 del Código de Incentivos y la Sección 6030.13 de la Ley Núm. 1-2011, según enmendada, mejor conocido como "Código de Rentas Internas para un Nuevo Puerto Rico" o "Código de Rentas Internas de Puerto Rico de 2011" 13 LPRA sec. 30011 *et seq.*, satisfacían las exigencias del escrutinio estricto. A tono con lo anterior, le solicitó nuevamente al Tribunal que encontrara incurso en desacato al DDEC.

El 11 de julio de 2025, el DDEC presentó una "**Moción sobre Desacato y Solicitando Término Adicional**" en la que argumentó que el 3 de abril de 2025 cumplió oportunamente con la *Orden* emitida por el TPI el 4 de marzo de 2025. Igualmente, señaló que la solicitud de desacato interpuesta por el CPI se presentó a destiempo y que la misma era improcedente en derecho y carente de méritos. En armonía con ello, le solicitó al foro de instancia un término de treinta (30) días con el fin de analizar detenidamente los méritos de los planteamientos formulados por el CPI. Dicho termino fue concedido por el *foro a quo.*

Así las cosas, el 11 de agosto de 2025, el DEEC presentó su "**Oposición a Solicitud de Desacato**" (en adelante, "Oposición") mediante la cual reiteró que había dado cumplimiento a la *Sentencia* del 27 de noviembre de 2024. Arguyó que la base de datos objeto de la solicitud de desacato no estaba en poder del DDEC. Precisó que el término "base de datos" aludía al "agregado disímil" de información recopilada de distintas fuentes y entidades, el cual fue utilizado para la elaboración del estudio comercial en cuestión. Indicó que dicha información fue generada por otras agencias, tales como el Departamento de Hacienda y el CRIM, y que permanecía bajo custodia de dichas entidades. Asimismo, alegó que no era susceptible de ser agregada, compilada y presentada cohesivamente en una base de datos. Esgrimió que son dichas agencias gubernamentales y no el DDEC las que estaban en posición de atender los requerimientos de información del CPI. Señaló que, aun en el supuesto de que el Tribunal entendiera que el DEEC debía crear una base de datos, dicha información era confidencial por virtud de ley y producirla violaría derechos de terceros. En vista de ello, le solicitó al foro de instancia que declarara "No Ha Lugar" la solicitud de desacato.

En reacción a lo anterior, el 18 de agosto de 2025, el CPI presentó su "**Réplica a Oposición a Solicitud de Desacato**" mediante la cual expresó que ya el Tribunal ordenó al DDEC a entregar la información en controversia. De igual manera, adujo que los planteamientos de confidencialidad fueron renunciados y que, de todos modos, no se han fundamentado de manera precisa e inequívoca. Por último, planteó que las doctrinas de actos de actos propios y de cosa juzgada, en sus modalidades de impedimento colateral y fraccionamiento de causas de acción son oponibles al DDEC. Esto pues, alegó que fue el propio DDEC quien expresó que la solicitud de la base de datos que se realizó para el estudio debía hacerse de conformidad con el caso anterior, bajo el alfanumérico SJ2021CV02443. De conformidad con ello, le peticionó al TPI nuevamente que: (1) encontrara incurso en desacato al DDEC, (2) activara

la multa de $5,000.00 diarios y (3) le impusiera el pago de una partida de honorarios de abogado no menor de $10,000.00.

Finalmente, el 30 de septiembre de 2025, el TPI emitió una *Resolución* en la que halló incurso en desacato al DDEC por incumplimiento con lo ordenado en la vista celebrada el 4 de marzo de 2025. En consecuencia, le impuso el pago de sesenta mil dólares ($60.000.00) como suma global de las sanciones acumuladas hasta la fecha del referido dictamen, así como la cantidad de $10,000.00 a favor de la Clínica de Asistencia Legal de la Facultad de Derecho de la Universidad Interamericana de Puerto Rico. Además, se le concedió un término final de diez (10) días para producir la información según fue solicitado por el CPI.

Inconforme con lo anteriormente resuelto, el DDEC presentó el recurso que nos ocupa, mediante el cual le imputó la comisión de los siguientes errores:

> **ERRÓ EL TPI AL ORDENAR AL DDEC A PRODUCIR UNA INFORMACIÓN QUE NO TIENE EN SU PODER, ASUNTO QUE SE DESPRENDE DEL RÉCORD, LO CUAL TRANSGREDE LAS OBLIGACIONES QUE TIENE UNA AGENCIA BAJO LA LEY 141-2019.**

> **ERRÓ EL TPI CUANDO, CONTRARIO AL DEBIDO PROCESO DE LEY DEL DDEC, SIN NOTIFICACIÓN PREVIA NI CELEBRAR UNA VISTA EVIDENCIARIA, ALTERÓ LO DICTAMINADO EN SU SENTENCIA DE 27 DE NOVIEMBRE DE 2024 MEDIANTE SU RESOLUCIÓN Y ORDEN DE 30 DE SEPTIEMBRE DE 2025.**

> **PRESUMIENDO, ARGUENDO, QUE NO SE COMETIERON LOS PRIMEROS DOS ERRORES SEÑALADOS, ERRÓ EL TPI AL DESCARTAR LOS PLANTEAMIENTOS DE CONFIDENCIALIDAD DEL DDEC, MÁXIME TRATÁNDOSE DE PLANTEAMIENTOS QUE INVOLUCRAN A TERCEROS Y QUE NO PUEDEN RENUNCIARSE.**

El 24 de octubre de 2025, el CPI presentó un "**Escrito en Cumplimiento de Resolución**".

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

## A.

El *mandamus* es un recurso que se expide para ordenar a una persona o personas naturales, corporación o tribunal de inferior jerarquía a cumplir o efectuar una actuación que forma parte de sus deberes o facultades. Carrasquillo Román v. Inst. Correccional, 204 DPR 699, 713 (2020); Art. 649 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3421. Su expedición es de carácter discrecional y su procedencia dependerá del tipo de acto que se pretenda ejecutar. Báez Galib y otros v. C.E.E. II, 152 DPR 382, 391-392 (2000). "[S]ólo procede para ordenar el cumplimiento de un deber ministerial, que no admite discreción en su ejercicio, cuando no hay otro mecanismo en ley para conseguir dicho remedio". Acevedo Vilá v. Aponte Hernández, 168 DPR 443, 454-455 (2006). Este recurso extraordinario "no procede cuando hay un remedio ordinario dentro del curso de ley, porque el objeto del auto no es reemplazar remedios legales sino suplir la falta de ellos". AMPR v. Srio. Educación, E.L.A., 178 DPR 253, 266-267 (2010).

La petición de *mandamus* debe ser evaluada a la luz de varios requisitos, a saber: (1) que el demandado tenga un deber u obligación ministerial impuesto por ley; (2) que el peticionario tenga un interés especial en el derecho que reclama; (3) que el deber de actuar de la agencia y el derecho del peticionario surjan de la ley de forma clara y patente; (4) que el peticionario no tiene otro remedio legal para hacer valer su derecho; y (5) que el tribunal entienda que los fines de la justicia obligan a su expedición, luego de estimar el efecto que tendrá la expedición del auto. 32 LPRA secs. 3421-3423.

Por ello, "[s]u expedición no se invoca como cuestión de derecho, sino que descansa en la sana discreción del foro judicial". Carrasquillo Román v. Inst. Correccional, *supra*, pág. 713. Cónsono con lo anterior, el deber ministerial que se invoca por vía del *mandamus* no puede tratarse de "una directriz o una disposición que permite hacer algo, sino de un mandato específico que la parte demandada no tiene opción para desobedecer". Íd.

**B.**

Nuestra jurisdicción ha reconocido como corolario al ejercicio de los derechos de libertad de palabra, prensa y asociación consagrado en la Constitución de Puerto Rico, el derecho de todo ciudadano al acceso a la información pública. Art. II, sec. 4, Const. PR, LPRA, Tomo I; Kilometro O, Inc. v. Pesquera López, 207 DPR 200, 207 (2021). De esta forma, se permite al ciudadano evaluar y fiscalizar la función gubernamental. Trans Ad de PR v. Junta de Subastas, 174 DPR 56, 67 (2008). Además de que fomenta "discusiones informadas y fortalece la facultad de la ciudadanía de participar efectiva e inteligentemente en los asuntos gubernamentales". Engineering Services v. AEE, 205 DPR 136, 146 (2020). Consistente con este mandato constitucional, el Artículo 409 del Código de Enjuiciamiento Civil reconoce que todo ciudadano tiene derecho a inspeccionar y a fotocopiar cualquier documento público de Puerto Rico, sujeto a las excepciones dispuestas por ley. 32 LPRA sec. 1781.

A tales efectos, se aprobó la Ley Núm. 141-2019, con el fin de pautar mecanismos procesales sencillos, ágiles y económicos para la solicitud y acceso a documentos e información pública. *Véase*, Exposición de Motivos de la Ley Núm. 141-2019, 3 LPRA sec. 9911 *et seq.* Debemos partir de la premisa de que, al momento de interpretar las disposiciones de este estatuto, se deberá hacer de la forma más liberal y beneficiosa para el solicitante. Art. 12 de la Ley Núm. 141-2019, 3 LPRA sec. 9922.

El Artículo 3 de la Ley Núm. 141-2019 dispone lo relacionado a la política pública del Gobierno de Puerto Rico, en cuanto al acceso a la información pública. Específicamente, se establece lo siguiente:

(1) La información y documentación que produce el gobierno se presume pública y accesible a todas las personas por igual.

(2) La información y documentación que produce el gobierno en sus estudios, transacciones y en el ejercicio de la autoridad pública, de manera directa o delegada, son patrimonio y memoria del pueblo de Puerto Rico.

(3) El derecho constitucional de acceso a la información requiere la transparencia gubernamental.

(4) Toda información o documento que se origine, conserve o reciba en cualquier dependencia del Gobierno, aunque se

encuentre bajo la custodia de un tercero, se presume público y debe estar accesible al Pueblo y la prensa.

(5) El derecho de acceso a la información pública es un pilar constitucional y un derecho humano fundamental.

(6) El acceso a la documentación e información pública tiene que ser ágil, económico y expedito.

(7) Toda persona tiene derecho a obtener la información y documentación pública, sujeto a las normas y excepciones aplicables.

(8) El Gobierno de Puerto Rico establece en la presente Ley una política de apertura a la información y documentación, que incluya la disponibilidad de la tecnología y de los avances necesarios para hacer valer el derecho de los solicitantes a acceder a la información y documentación pública de forma oportuna, objetiva, veraz, completa, reutilizable, procesable y disponible en formatos accesibles, inalterados e íntegros. 3 LPRA sec. 9913.

De igual forma, el Artículo 4 de la Ley Núm. 141-20119, indica que la entidad gubernamental deberá divulgar aquella información "sobre su funcionamiento, la ejecución y control de las funciones delegadas, así como toda documentación pública que sea realizada por la entidad de forma rutinaria". 3 LPRA sec. 9914. Por otra parte, dicha pieza legislativa reconoce que la parte que solicita la información no tiene que acreditar algún interés particular o jurídico. Art. 6 de la Ley Núm. 141-2019, 3 LPRA sec. 9916. No obstante, al momento de solicitarla "deberá incluir al menos una dirección o correo electrónico para recibir notificaciones, el formato en que desea recibir la información y una descripción de la información que solicita". Íd. La agencia o entidad gubernamental deberá entregar la información solicitada en un término no mayor de diez (10) días laborables, contado a partir del momento en que se solicitó la información. No obstante, si la solicitud se realizó ante una oficina regional de la agencia o entidad gubernamental, la ley concede un término de quince (15) días, prorrogable por un término único de diez (10) días laborables adicionales. Art. 7 de la Ley Núm. 141-2019, 3 LPRA sec. 9917.

Ahora bien, de una agencia o entidad gubernamental denegar proveer la información pública solicitada, deberá especificar por escrito los fundamentos para ello. Íd. A raíz de dicha denegatoria o ante la falta de entrega de información solicitada en el término establecido, la ley permite

al solicitante presentar un Recurso Especial de Acceso a Información Pública ante el Tribunal de Primera Instancia. Íd.

### C.

El procedimiento de desacato en nuestra jurisdicción proviene de tres fuentes jurídicas y se fundamenta en "el poder inherente de los tribunales para hacer cumplir sus órdenes". E.L.A. v. Asoc. de Auditores, 147 DPR 669, 681 (1999); *In re* Collazo I, 159 DPR 141, 150-151 (2003). Así, dicho mecanismo está dirigido a que los jueces puedan guardar e imponer el orden en su presencia y en los procedimientos ante su consideración. Además, se utiliza para que los tribunales puedan vindicar su autoridad y dignidad, además de hacer cumplir sus órdenes, sentencias y providencias. *In re* Velázquez Hernández, 162 DPR 316, 326 (2004). Este mecanismo también se utiliza para realizar u ordenar cualquier acto que resulte necesario a fin de cumplir a cabalidad sus funciones. Íd.; Art. 2.017 de la Ley 201-2003, mejor conocida como la Ley de la Judicatura, 4 L.P.R.A. sec. 240. La característica esencial del desacato es que la parte perjudicada siempre es el tribunal. *In re* Cruz Aponte, 159 DPR 170, 182 (2003). Nótese que mediante la imposición del desacato no se persigue vindicar la persona del juez agraviado, sino que su propósito es rehabilitar la dignidad y autoridad de los foros judiciales. Íd.

El castigo que se impone mediante el desacato civil es de naturaleza coercitiva, pues el objetivo que persigue es lograr que ese individuo le dé cumplimiento a una obligación, ya sea que ésta emane de una sentencia, orden u otra fuente. *In re* Velázquez Hernández, *supra*, pág. 327; Srio. D.A.C.O. v. Comunidad San José, Inc., 130 DPR 782, 804 (1992). Así, se considera que el desacato civil tiene un propósito reparador. Álvarez v. Arias, 156 DPR 352, 372 (2002). Ello se fundamenta en que el desacato civil se "basa en el sano principio de que la observancia de las órdenes de los tribunales por parte de aquellos contra quienes van dirigidas es de cardinal importancia para la administración de la justicia". Srio. D.A.C.O. v. Comunidad San José, Inc., *supra*, pág. 804.

La penalidad impuesta en el desacato civil es por un tiempo indefinido, que será efectiva hasta que la parte cumpla con su obligación primaria. Pérez v. Espinosa, 75 DPR 777, 781-782 (1954). Como hemos expresado, su propósito no es punitivo, sino que sirve únicamente como un medio para lograr "la finalidad esencial del cumplimiento de la orden original". Íd., pág. 781. Esta sanción consiste en una pena de reclusión o multa, según la discreción del tribunal. Pérez Pascual v. Vega Rodríguez, 124 DPR 529, 534 (1989).

Es de importancia enfatizar que la imposición del desacato civil está sujeta a las garantías mínimas del debido proceso de ley, lo que incluye el derecho a ser notificado y una adecuada oportunidad a ser escuchado. United Mine Workers v. Bagwell, 512 US 821, 827 (1994). Así, en los casos en que una parte ha desobedecido una orden dictada por el tribunal, debe celebrarse una vista y darle la oportunidad a ser oída a la parte potencialmente afectada. United Mine Workers v. Bagwell, *supra*. Además, la parte que invoca el desacato civil debe demostrar que la otra parte fue notificada adecuadamente de la orden o dictamen del tribunal, que la orden era clara y definitiva, que la parte tenía la capacidad de cumplir con dicha orden y que, en efecto, la parte no cumplió con dicha orden. Brown v. Colegio de Abogados, 765 F. Supp. 2d. 133 (DPR 2011); Goya Foods, Inc. v. Unanue-Casal, 141 F. Supp. 2d. 207 (DPR 2001).

**III.**

En el presente caso, el DDEC nos solicitó la revocación de la *Resolución* del TPI mediante la cual se le encontró incurso en desacato y se le ordenó al pago global de $70,000.00.

Los señalamientos de error esgrimidos están íntimamente relacionados, por lo que se abordarán de manera conjunta en la discusión. En resumidas cuentas, el DDEC sostiene que el TPI erró al: (1) ordenarle a producir una información que no tiene en su poder, (2) alterar la *Sentencia* del 27 de noviembre de 2024 sin haber celebrado una vista evidenciaria al respecto y al (3) descartar los planteamientos de confidencialidad. Veamos.

Del expediente ante nuestra consideración se desprende que el 18 de octubre de 2024 el CPI presentó una "**Petición de *Mandamus***" en contra del DDEC solicitando la entrega de los nombres de las organizaciones sin fines de lucro que habían recibido donativos de beneficiarios de la antigua Ley Núm. 22, *supra*, y de la Ley Núm. 60, *supra*, durante un periodo de tiempo específico y la base de datos utilizada para el estudio comercial y su correspondiente diccionario. El DDEC se opuso alegando que dicha base de datos no podía producirse en su totalidad por contener información confidencial cuya depuración requería tiempo. El 25 de noviembre de 2024, el CPI presentó una "**Solicitud de Reconsideración**" en la que argumentó que la mayoría de los tenedores eran personas jurídicas, por lo que no les aplicaban las normas de confidencialidad invocadas.

El 27 de noviembre de 2024, el TPI emitió una *Sentencia* declarando "Ha Lugar" la petición de *mandamus* y ordenó la entrega de la información peticionada dentro de un término de cuarenta y cinco (45) días. Posteriormente, tras la presentación de dos mociones del CPI solicitando que se encontrara al DDEC incurso en desacato, el 18 de febrero de 2025 el Peticionario solicitó un término adicional de diez (10) días para entregar la información sobre las organizaciones en cuestión y **aclaró que no existía una base de datos del estudio comercial como tal, puesto que la información fue recopilada de múltiples agencias gubernamentales y el estudio fue efectuado por un tercero**.

Posteriormente, se celebró una vista de estado de los procedimientos en la que se discutió la producción ordenada en la *Sentencia*. Allí, y por segunda ocasión, el DDEC reiteró que la información utilizada para el estudio provenía de múltiples fuentes y que no provenía de un programa específico o de una tabulación que estuviera en posesión del Peticionario. Evaluados los argumentos de las partes, el foro de instancia le concedió al DDEC un término final de treinta (30) días para producir la información, según fue solicitada, y le impuso una sanción de cinco mil dólares ($5,000.00) diarios, a partir del 2 de abril de 2025, si la

misma no era producida. El 3 de abril de 2025, el DDEC presentó una *Moción en Cumplimiento de Sentencia* a través de la cual informó que le remitió al CPI un enlace con información sobre los nombres y/o entidades a favor de quien se emitieron los decretos y la fecha en que se aprobaron. Advirtiendo, además, que cualquier otra información que el DDEC poseía respecto a dichas personas y/o entidades constituía información financiera y/o tributaria o un secreto de negocio protegido por la Ley Núm. 80-2011, *supra*.

Finalmente, tras la presentación de una nueva moción de desacato y su correspondiente *Oposición*, el foro *a quo* declaró incurso en desacato al DDEC y le impuso el pago de sesenta mil dólares ($60,000.00) como suma global de las sanciones acumuladas y diez mil dólares ($10,000.00) en concepto de honorarios de abogado. En consecuencia, le concedió un término final de diez (10) días para producir la información solicitada por el CPI.

Conforme reseñáramos en los acápites anteriores, nuestro ordenamiento jurídico reconoce el derecho de todo ciudadano al acceso a la información pública. En línea con ello, la Ley Núm. 141-2019, *supra*, fue aprobada con el propósito de pautar mecanismos procesales sencillos, ágiles y económicos para las solicitudes de acceso a documentos de dicha naturaleza. *Véase*, Exposición de motivos de la Ley Núm. 141-2019, *supra*. Sobre ese prisma legislativo, se dispuso que toda información o documento que se origine, conserve o reciba de cualquier dependencia del Gobierno se presume pública y debe ser accesible a la ciudadanía. 3 LPRA sec. 9913. Así pues, el Artículo 4 del referido estatuto dispone expresamente que las entidades gubernamentales deben divulgar aquella información sobre su funcionamiento, la ejecución y control de las funciones delegadas, así como toda documentación pública que sea realizada por la entidad de forma rutinaria. 3 LPRA sec. 9914.

Tras un análisis detallado y comprensivo del expediente ante nuestra consideración, incluyendo el recurso de "***Mandamus***", la *Sentencia*, las mociones de desacato, su correspondiente *Oposición* y la

*Resolución* recurrida, hemos arribado a la conclusión de que el TPI erró al hallar incurso en desacato al DDEC. Nos explicamos.

En el caso de autos, el CPI presentó el recurso extraordinario de "***Mandamus***" para obtener la siguiente información, a saber: (1) los nombres de las organizaciones sin fines de lucro que han recibido donativos de beneficiarios de la Ley Núm. 22, *supra*, y la Ley Núm. 60, *supra*, y (2) la base de datos utilizada para el estudio económico objeto de la presente controversia.

De entrada, debemos establecer que no coincidimos con el TPI en su apreciación de que el planteamiento de que no existía la base de datos utilizada se efectuó a destiempo. Somos de la opinión de que dicho planteamiento es, precisamente, cónsono con la *Sentencia* emitida por el TPI en el caso de autos al limitarse la orden dirigida al DDEC "a producir y/o brindar acceso a la **información o documentos públicos existentes y bajo su custodia**"[1]. De hecho, y relacionado con dichas expresiones el foro *a quo* aclaró que "de ningún modo lo aquí resuelto debe entenderse como una orden judicial que requiera a la parte recurrida **'crear' o 'generar' información y documentos** que no existen o que no ha recibido, o documentos que la **ley no exige que la agencia prepare, genere o conserve**".[2]

Tras recaer la *Sentencia*, el DDEC planteó que la base de datos solicitada no podía producirse en su totalidad por contener información de carácter confidencial. Posteriormente, y luego del cambio de gobierno, del jefe de la agencia y de la representación legal, el DDEC aclaró que no existía una base de datos bajo su control vinculada al referido estudio comercial como tal, pues éste fue elaborado a partir de información recopilada de múltiples fuentes, incluyendo distintas agencias administrativas tales como el CRIM y el Departamento de Hacienda. Luego de la celebración de la vista el 4 de marzo de 2025, el DDEC remitió al CPI un enlace con cierta información que obraba en su poder relativa a las

---

[1] *Véase*, SUMAC TPI, Entrada Núm. 12, pág. 9 (énfasis suplido).
[2] Íd., pág. 10, n. 3 (énfasis suplido).

personas y entidades a favor de quienes se emitieron los decretos. De igual forma, advirtió que cualquier información adicional en su poder concerniente a dichas personas o entidades podría estar amparada por disposiciones de confidencialidad en materia financiera o contributiva, así como por el privilegio de secreto de negocio consagrado en la Ley Núm. 80-2011, *supra.*

Primeramente, es de particular importancia dejar claramente establecido que la única providencia judicial que estaba sujeta al desacato impuesto era exclusivamente la *Sentencia* dictada el 27 de noviembre de 2024. De conformidad con la misma, la obligación de producción del Peticionario se circunscribió a aquélla que existiera y estuviera bajo su custodia. De hecho, el juzgador de instancia aclaró que su orden, de ninguna manera, implicaba crear documentos o información relacionada a la petición que efectuó el CPI.

Siendo ello así, no nos cabe duda de que el DDEC no tiene la obligación de producir documentación o información que no esté en su posesión. No existe controversia alguna sobre el hecho de que la información que nutrió el estudio en controversia estaba en manos de terceros y de otras agencias del Ejecutivo y no en posesión del Peticionario. De hecho, la recopilación y los resultados de la misma le fue encomendado a un ente privado. Por tanto, no podemos sino colegir que el DDEC cumplió con producir aquéllo que estaba bajo su custodia y control y así lo hizo e informó al TPI cuando notificó el enlace con la información a la que tiene acceso.

La conclusión a la que arribó el foro de instancia a los efectos de que el Peticionario recibió la información que alimentó la base de datos en controversia no encuentra apoyo en el expediente electrónico del caso. Fíjese que el DDEC solamente se ha negado a producir aquella información o documentación que, a su juicio, es confidencial o protegida por algún privilegio. Más aun, el Peticionario en ningún momento se ha negado a producir la información que está bajo su custodia y control; la imposibilidad para proveer la llamada base de datos estriba en que la misma se nutrió de

documentación que obra en manos de otras entidades del Gobierno de Puerto Rico.

Por tanto, antes de recurrir a la imposición de la severa sanción de desacato, el foro de instancia tenía el deber de celebrar una vista evidenciaria en la que dilucidara, si el DDEC cumplió cabalmente con la *Sentencia* dictada el 27 de noviembre de 2024 y si la información no provista se encontraba o no en su poder y/o estaba legítimamente protegida por normas de confidencialidad o por el privilegio de secreto de negocio. Lo anterior habría permitido al Tribunal valorar, con mayor precisión, el alcance real de la información producida, las gestiones realizadas para cumplir con la *Sentencia* y las circunstancias específicas que pudieron haber influido en la imposibilidad de entregar determinada información. Esto es, solo a través de un análisis probatorio de tal naturaleza el foro *a quo* podía determinar, con el grado de certeza requerido en nuestro ordenamiento jurídico, si hubo un incumplimiento voluntario y contumaz de la *Sentencia* del Tribunal de proveer la información solicitada o si, por el contrario, la referida agencia había cumplido con su deber.

Dicho de otro modo, la omisión de dicha vista privó al DDEC de la oportunidad real de presentar evidencia y de explicar de forma detallada las gestiones realizadas para entregar la información solicitada, lo que a su vez limitó el espectro real del Tribunal de contar con un cuadro completo y preciso sobre el estado del cumplimiento de la *Sentencia.* En tales circunstancias, la imposición de una sanción tan drástica como lo es el desacato resulta prematura. Resolver lo opuesto implicaría dar por sentado que la información que el DDEC entregó es insuficiente sin sustento probatorio alguno y/o asumir que la documentación que utilizó un tercero para llevar a cabo el estudio sí la tenía el Peticionario, cuando consistentemente ha expresado para récord que no es así.

Coincidimos con el DDEC a los efectos de que tenía pleno derecho a descansar en la finalidad de la *Sentencia* y producir aquello que estaba en su posesión, sin que se le impusiera el oneroso peso de crear o generar

información o documentos que la ley no exige que dicha agencia prepare, genere o conserve. Repetimos, este es el dictamen cuyo cumplimiento se podía salvaguardar por vía del desacato; ni más, ni menos. Sostener lo contrario equivaldría a enmendar lo consignado en un dictamen final y firme, sin cumplir con las herramientas procesales existentes en nuestro ordenamiento.

En suma, somos de la opinión de que el TPI erró al imponer la sanción de desacato sin haber agotado un procedimiento indispensable para llegar a dicha conclusión cuando existen controversias sobre hechos importantes. Por consiguiente, procede revocar la *Resolución* recurrida y devolver el caso al foro de instancia para la celebración de una vista evidenciaria en la que se deberá dilucidar el cumplimiento específico a la *Sentencia* del 27 de noviembre de 2024 y si la información que no se incluyó como parte de la producción efectuada por el DDEC el 3 de abril de 2025 está amparada por normas de confidencialidad.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de la presente *Sentencia*, *expedimos* el auto de *certiorari* ante nuestra consideración y *revocamos* la *Resolución* recurrida.

Se devuelve el caso al foro de instancia para que se celebre una vista evidenciaria y se dilucide el cumplimiento específico a la *Sentencia* del 27 de noviembre de 2024 por parte del Peticionario y si la información que no se incluyó como parte de la producción efectuada está amparada por normas de confidencialidad o de algún privilegio estatutario o probatorio.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones